**LATHAM & WATKINS LLP**
  Matthew Rawlinson (Bar No. 231890)
140 Scott Drive
Menlo Park, California 94025
Telephone: 650.328.4600
Facsimile: 650.463.2600
*matt.rawlinson@lw.com*

**COOLEY LLP**
  Patrick E. Gibbs (Bar No. 183174)
3175 Hanover Street
Palo Alto, California 94304
Telephone: 650.843.5535
Facsimile: 650.849.7400
*pgibbs@cooley.com*

**LATHAM & WATKINS LLP**
  Melanie M. Blunschi (Bar No. 234264)
505 Montgomery Street, Suite 2000
San Francisco, California, 94111
Telephone: 415.391.0600
Facsimile: 415.395.8095
*melanie.blunschi@lw.com*

**LATHAM & WATKINS LLP**
  Jason C. Hegt (admitted *pro hac vice*)
885 Third Avenue, Suite 1000
New York, New York 10022
Telephone: 1.212.906.1200
Facsimile: 1.212.751.4864
*jason.hegt@lw.com*

Attorneys for DEFENDANTS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| DAVID HAMILTON, derivatively, on behalf of ADVANCED MICRO DEVICES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> W. MICHAEL BARNES, *et al.*, <br> Defendants, <br> and <br><br> ADVANCED MICRO DEVICES, INC. <br> Nominal Defendant; <br><br> JAKE HA, derivatively and on behalf of himself and all others similarly situated [*sic*], <br><br> Plaintiff, <br><br> v. <br><br> JOHN E. CALDWELL, *et al.*, <br> Defendants, <br> and <br><br> ADVANCED MICRO DEVICES, INC. <br> Nominal Defendant | CASE NO. 4:15-cv-01890-YGR <br> CASE NO. 4:15-cv-04485-YGR <br><br> **DEFENDANTS' NOTICE OF MOTION, MOTION TO DISMISS, AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> Date:    April 10, 2018 <br> Time:    2:00 p.m. <br> Place:    Courtroom 1, 4th Floor <br> Judge:   Honorable Yvonne Gonzalez Rogers |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

DEFENDANTS' NOTICE OF MOTION, MOTION TO
DISMISS, AND SUPPORTING MEMORANDUM
CASE NO. 4:15-cv-01890-YGR

1

**TABLE OF CONTENTS**

2

Page

3   I.      INTRODUCTION ................................................................................................ 1

4   II.     FACTUAL ALLEGATIONS OF THE COMPLAINTS ................................... 4

5   III.    LEGAL STANDARDS FOR DEMAND FUTILITY ....................................... 5

6           A.      Derivative Suits Are a Narrow Exception to the General Rule that
                    Boards of Directors Control Corporate Actions .................................... 5
7
8           B.      Demand Futility is Reserved for "Rare Cases" of "Egregious"
                    Misconduct ............................................................................................. 6

9           C.      Alleging Demand Futility Is Even Harder Because AMD's Articles
                    of Incorporation Strictly Limit Its Directors' Potential Liability .......... 7
10
11          D.      Claims Based on Insufficient Board Oversight Require Finding of
                    Bad Faith ................................................................................................ 8

12  IV.     PLAINTIFFS' AMENDED COMPLAINTS FAIL BECAUSE
            PLAINTIFFS DID NOT MAKE A DEMAND ON AMD'S CURRENT
13          BOARD OF DIRECTORS ................................................................................ 9

14  V.      PLAINTIFFS FAIL TO ALLEGE THAT DEMAND ON AMD'S 2015
            BOARD WOULD HAVE BEEN FUTILE ..................................................... 10
15
16          A.      There Are No Facts Suggesting AMD's Board Knew Of
                    Misconduct ........................................................................................... 10

17          B.      Documents Produced In The *Hatamian* Case Cannot Show
                    Demand Futility .................................................................................... 12
18
19          C.      The *Hatamian* Complaint Does Not Provide A Basis To Allege
                    Futility .................................................................................................. 13

20          D.      Committee Service Does Not Establish a Substantial Likelihood of
                    Liability ................................................................................................ 14
21
22          E.      Dr. Su's Status as AMD's CEO and a Defendant in the *Hatamian*
                    Action Does Not, By Itself, Establish a Substantial Likelihood of
23                  Liability ................................................................................................ 15

24          F.      The Existence of Corporate Governance Policies Does Not Excuse
                    Demand .................................................................................................. 16

25          G.      The Directors' Reasonable Compensation Does Not Excuse
                    Demand .................................................................................................. 16
26
27          H.      Merely Serving on the Board Does Not Make a Director
                    Potentially Liable ................................................................................. 17

28          I.      Plaintiffs Allege No Facts to Suggest the Board Lacked

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

i

DEFENDANTS' NOTICE OF MOTION, MOTION TO
DISMISS, AND SUPPORTING MEMORANDUM
CASE NO. 4:15-cv-01890-YGR

Independence ............................................................................ 17

VI.  THE *HA* COMPLAINT'S SECTION 14(A) CLAIMS ARE UNTIMELY
AND FAIL TO PLEAD DEMAND FUTILITY AND MATERIAL
FALSITY ........................................................................................ 20

   A.   Mr. Ha Failed to Plead Demand Futility for the Section 14(a)
        Claims ................................................................................. 21

   B.   Mr. Ha's Section 14(a) Claims are Time-Barred ................................. 21

   C.   Mr. Ha Failed to Plead Material Falsity In AMD's Proxy
        Statements ............................................................................ 22

VII.  PLAINTIFFS' MISMANAGEMENT, WASTE, AND UNJUST
ENRICHMENT CLAIMS ARE MERELY DUPLICATIVE OF THEIR
FIDUCIARY CLAIMS .......................................................................... 24

VIII. LEAVE TO AMEND WOULD BE FUTILE AND SHOULD BE
DENIED ........................................................................................ 25

IX.  CONCLUSION ................................................................................. 25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LATHAM&WATKINS™
Attorneys At Law
Silicon Valley

ii

DEFENDANTS' NOTICE OF MOTION, MOTION TO
DISMISS, AND SUPPORTING MEMORANDUM
CASE NO. 4:15-cv-01890-YGR

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*In re Accuray, Inc. S'holder Deriv. Litig.,*
   757 F. Supp. 2d 919 (N.D. Cal. 2010) ...................................................................6

*In re Am. Int'l Group, Inc. Deriv. Litig.,*
   700 F. Supp. 2d 419 (S.D.N.Y. 2010) ................................................................11

*Stone ex rel. AmSouth Bancorporation v. Ritter,*
   911 A.2d 362 (Del. 2006) ....................................................................... *passim*

*Aronson v. Lewis,*
   473 A.2d 805 (Del. 1984) ...................................................................................7

*In re Autodesk, Inc., S'holder Deriv. Litig.,*
   2008 WL 5234264 (N.D. Cal. Dec. 15, 2008) ...................................................8

*In re Baxter Int'l, Inc. S'holders Litig.,*
   654 A.2d 1268 (Del. Ch. 1995).............................................................8, 15, 16

*In re Bidz.com, Inc. Deriv. Litig.,*
   773 F. Supp. 2d 844 (C.D. Cal. 2011) ...............................................................6

*Bond Opportunity Fund v. Unilab Corp.,*
   2003 WL 21058251 (S.D.N.Y. May 9, 2003) ..................................................22

*Braddock v. Zimmerman,*
   906 A.2d 776 (Del. 2006) ...............................................................................3, 9

*Brehm v. Eisner,*
   746 A.2d 244 (Del. 2000) .............................................................................6, 24

*Brown v. Moll,*
   2010 WL 2898324 (N.D. Cal. July 21, 2010).................................................7, 20

*In re Caremark Int'l Inc. Deriv. Litig.,*
   698 A.2d 959 (Del. Ch. 1996)...................................................................2, 8, 11

*In re Citigroup S'holder Deriv. Litig.,*
   964 A.2d 106 (Del. Ch. 2009)....................................................9, 12, 21, 24

*City of Birmingham Ret. & Relief Sys. v. Good,*
   2017 WL 6397490 (Del. Dec. 15, 2017) ...........................................................5, 8

*In re CNET Networks, Inc. S'holder Deriv. Litig.,*
   483 F. Supp. 2d 947 (N.D. Cal. 2007) ...........................................................14, 21

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

iii

DEFENDANTS' NOTICE OF MOTION, MOTION TO
DISMISS, AND SUPPORTING MEMORANDUM
CASE NO. 4:15-cv-01890-YGR

*Copeland v. Lane*,
   2012 WL 4845636 (N.D. Cal. Oct. 10, 2012)........................................................................21

*In re Corinthian Colleges, Inc. S'holder Deriv. Litig.*,
   2012 WL 8502955 (C.D. Cal. Jan. 30, 2012)......................................................................16

*In re CRM Holdings, Ltd. Sec. Litig.*,
   2012 WL 1646888 (S.D.N.Y. May 10, 2012) .......................................................................13

*Dekalb Cty. Pension Fund v. Transocean Ltd.*,
   817 F.3d 393 (2d Cir. 2016).................................................................................................21

*Desaigoudar v. Meyercord*,
   223 F.3d 1020 (9th Cir. 2000) .............................................................................................23

*Desimone v. Barrows*,
   924 A.2d 908 (Del. Ch. 2007)................................................................................................8

*Dodds v. Cigna Sec., Inc.*,
   12 F.3d 346 (2d Cir. 1993)..................................................................................................22

*Durgin v. Sharer*,
   2017 WL 2214618 (C.D. Cal. Jan. 10, 2017) .....................................................................25

*In re First Solar Derivative Litig.*,
   2016 WL 3548758 (D. Ariz. June 30, 2016) .......................................................................13

*Gaines v. Haughton*,
   645 F.2d 761 (9th Cir. 1981) ...............................................................................................23

*Gamco Asset Mgmt., Inc. v. iHeartMedia, Inc.*,
   2016 WL 6892802 (Del. Ch. Nov. 29, 2016) .....................................................................24

*In re Gen. Motors Co. Deriv. Litig.*,
   2015 WL 3958724 (Del. Ch. June 26, 2015) ......................................................................15

*In re Google, Inc. S'holder Derivative Litig.*,
   2013 WL 5402220 (N.D. Cal. Sept. 26, 2013) ...................................................................19

*Gordon v. Bindra*,
   2014 WL 2533798 (C.D. Cal. June 5, 2014) .......................................................................15

*Grobow v. Perot*,
   539 A.2d 180 (Del. 1988) .................................................................................................7, 18

*Harris v. Carter*,
   582 A.2d 222 (Del. Ch. 1990)...........................................................................................3, 9

*In re HealthSouth Corp. S'holders Litig.*,
   845 A.2d 1096 (Del. Ch. 2003)...........................................................................................11

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

iv

DEFENDANTS' NOTICE OF MOTION, MOTION TO
DISMISS, AND SUPPORTING MEMORANDUM
CASE NO. 4:15-cv-01890-YGR

*Hutton v. McDaniel*,
   2017 WL 3704696 (D. Ariz. Aug. 28, 2017) ..............................................................21, 22

*Jacobs v. Yang*,
   2004 WL 1728521 (Del. Ch. Aug. 2, 2004) ......................................................................16

*Kamen v. Kemper Fin. Servs., Inc.*,
   500 U.S. 90 (1991) .............................................................................................................6

*Khanna v. McMinn*,
   2006 WL 1388744 (Del. Ch. May 9, 2006) ......................................................................20

*In re Linear Tech. Corp. Deriv. Litig.*,
   2006 WL 3533024 (N.D. Cal. Dec. 7, 2006) ....................................................................14

*Laties v. Wise*,
   2005 WL 3501709 (Del. Ch. Dec. 14, 2005) ....................................................................24

*Levine v. Smith*,
   591 A.2d 194 (Del. 1991) ...............................................................................................3, 7

*Lipsky v. Commonwealth United Corp.*,
   551 F.2d 887 (2d Cir. 1976) .............................................................................................13

*Louisiana Mun. Police Emps.' Ret. Sys. v. Wynn*,
   829 F.3d 1048 (9th Cir. 2016). .....................................................................................3, 17

*Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*,
   845 A.2d 1040 (Del. 2004) ...........................................................................6, 7, 13, 18

*Moran v. Household Int'l, Inc.*,
   490 A.2d 1059 (Del. Ch. 1985) .........................................................................................17

*N.Y.C. Emps.' Ret. Sys. v. Jobs*,
   593 F.3d 1018 (9th Cir. 2010) ..........................................................................................21

*In re Nyfix, Inc. Derivative Litig.*,
   567 F. Supp. 2d 306 (D. Conn. 2008) ................................................................................9

*In re Oracle Corp.*,
   867 A.2d 904 (Del. Ch. 2004) ..........................................................................................16

*Oswald v. Humphreys*,
   2016 WL 6582025 (N.D. Cal. Nov. 7, 2016) ..................................................................6, 7

*In re Paypal Holdings, Inc. S'holder Derivative Litig.*,
   2018 WL 466527 (N.D. Cal. Jan. 18, 2018) ...............................................................23, 24

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Lundgren*,
   579 F. Supp. 2d 520 (S.D.N.Y. 2008) ..............................................................................12

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

v

DEFENDANTS' NOTICE OF MOTION, MOTION TO
DISMISS, AND SUPPORTING MEMORANDUM
CASE NO. 4:15-cv-01890-YGR

*In re Polycom, Inc.*,
    78 F. Supp. 3d 1006 (N.D. Cal. 2015) ..........................................................................8, 9, 15

*Potter v. Hughes*,
    546 F.3d 1051 (9th Cir. 2008) ...................................................................................................5

*Rales v. Blasband*,
    634 A.2d 927 (Del. 1993) ............................................................................................2, 6, 13

*Rattner v. Bidzos*,
    2003 WL 22284323 (Del. Ch. Sept. 30, 2003) .......................................................................12

*RSM Prod. Corp. v. Fridman*,
    643 F. Supp. 2d 382 (S.D.N.Y. 2009)....................................................................................13

*Rudolph v. UTStarcom*,
    560 F. Supp. 2d 880 (N.D. Cal. 2008) ...................................................................................21

*In re Sagent Tech., Inc. Deriv. Litig.*,
    278 F. Supp. 2d 1079 (N.D. Cal. 2003) ...........................................................................17, 18

*Seinfeld v. Bartz*,
    322 F.3d 693 (9th Cir. 2003) .................................................................................................21

*Silberstein v. Aetna, Inc.*,
    2015 WL 1424058 (S.D.N.Y. Mar. 26, 2015) .......................................................................22

*In re Silicon Graphics Sec. Litig.*,
    183 F.3d 970 (9th Cir. 1999) ........................................................................................6, 7, 25

*South v. Baker*,
    62 A.3d 1 (Del. Ch. 2012) ..........................................................................................8, 11, 12

*Stockman-Sann v. McKnight*,
    2013 WL 8284817 (C.D. Cal. Mar. 25, 2013) .......................................................................19

*Tooley v. Donaldson, Lufkin & Jenrette, Inc.*,
    845 A.2d 1031 (Del. 2004) ....................................................................................................21

*In re VeriSign, Inc., Deriv. Litig.*,
    531 F. Supp. 2d 1173 (N.D. Cal. 2007) .....................................................................17, 21, 22

*In re Walt Disney Co. Deriv. Litig.*,
    731 A.2d 342 (Del. Ch. 1998 .................................................................................................15

*In re Walt Disney Co. Deriv. Litig.*,
    907 A.2d 693 (Del. Ch. 2005).................................................................................................24

*Westinghouse Elec. Corp. by Levit v. Franklin*,
    993 F.2d 349 (3d Cir. 1993) ...................................................................................................21

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

vi

DEFENDANTS' NOTICE OF MOTION, MOTION TO
DISMISS, AND SUPPORTING MEMORANDUM
CASE NO. 4:15-cv-01890-YGR

*Wood v. Baum*,
   953 A.2d 136 (Del. 2008) ...........................................................................2, 15, 20

*In re Yahoo! Inc. S'holder Deriv. Litig.*,
   153 F. Supp. 3d 1107 (N.D. Cal. 2015) ...................................................... *passim*

*In re Zoran Corp. Deriv. Litig.*,
   511 F. Supp. 2d 986 (N.D. Cal. 2007) ................................................................24

## STATUTES

15 U.S.C. § 78n(a) .............................................................................................................20

## RULES

Fed. R. Civ. P. 23.1(b)(3)....................................................................................................6

## REGULATIONS

17 C.F.R. § 240.14a-9(a) ...................................................................................................21

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SILICON VALLEY

vii

DEFENDANTS' NOTICE OF MOTION, MOTION TO
DISMISS, AND SUPPORTING MEMORANDUM
CASE NO. 4:15-cv-01890-YGR

# GLOSSARY

The following terms are used in this memorandum:

| | |
|---|---|
| AMD: | Advanced Micro Devices, Inc. |
| Ex: | As used throughout this Memorandum, "Ex." refers to the exhibits to the declaration of Morgan E. Whitworth submitted concurrently herewith. |
| *Ha* Complaint: | Verified Amended Shareholder Derivative Complaint of Jake Ha |
| *Ha* Individual Defendants: | John E. Caldwell, Henry WK Chow, Bruce L. Claflin, Nora M. Denzel, Nicholas M. Donofrio, Martin L. Edelman, John R. Harding, Joseph A. Householder, Michael J. Inglis, Lisa T. Su, and Ahmed Yahia |
| *Hamilton* Complaint: | Verified First Amended Shareholder Derivative Complaint of David Hamilton |
| *Hamilton* Individual Defendants: | W. Michael Barnes, Richard A. Bergman, John E. Caldwell, Henry WK Chow, Bruce L. Claflin, Nicholas M. Donofrio, John R. Harding, Rory P. Read, Thomas J. Seifert, and Lisa T. Su |
| Individual Defendants: | The "*Ha* Individual Defendants" and the "*Hamilton* Individual Defendants" |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

viii

DEFENDANTS' NOTICE OF MOTION, MOTION TO
DISMISS, AND SUPPORTING MEMORANDUM
CASE NO. 4:15-cv-01890-YGR

1

**NOTICE OF MOTION AND MOTION**

2

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

3      PLEASE TAKE NOTICE that on April 10, 2018, at 2 p.m., or as soon thereafter as the

4   matter may be heard in the United States District Court for the Northern District of California,

5   Courtroom of the Honorable Yvonne Gonzalez Rogers, 1301 Clay Street, Oakland, CA 94612,

6   4th Floor, Nominal Defendant AMD and the Individual Defendants hereby move this Court for

7   an order in the above-captioned actions dismissing the *Hamilton* Complaint and the *Ha*

8   Complaint with prejudice pursuant to Rules 12(b)(6) and 23.1 of the Federal Rules of Civil

9   Procedure.  This Motion is based on this Notice, the supporting Memorandum of Points and

10   Authorities, the Declaration of Morgan E. Whitworth filed concurrently herewith, the

11   accompanying Request for Judicial Notice, the complete files and records in this action, and any

12   additional material and arguments as may be considered in connection with the hearing.

13

**ISSUES TO BE DECIDED**

14      **(1)** Whether the purported futility of making a demand on AMD's Board of Directors is

15   judged by the members who comprised AMD's board on the dates when the original *Hamilton*

16   and *Ha* Complaints were filed (April 27, 2015 and September 29, 2015, respectively) or the

17   members who comprised AMD's Board of Directors on the dates when the amended *Hamilton*

18   and *Ha* Complaints were filed (January 30, 2018 and February 2, 2018, respectively).[1]

19      **(2)** Whether the Complaints adequately plead that Plaintiffs' failure to make a pre-suit

20   demand on AMD's Board of Directors was excused.

21      **(3)** Whether the *Ha* Complaint's claim under Section 14 of the Securities Exchange Act

22   of 1934 and SEC Rule 14a-9 is timely and adequately pled.

23

**MEMORANDUM OF POINTS AND AUTHORITIES**

24   **I.      INTRODUCTION**

25      These are "copycat" lawsuits originally filed after the Court denied the motion to dismiss

26   in a related securities class action captioned *Hatamian v. Advanced Micro Devices, Inc.*, No.

27   _____

28   [1]  Appendix A hereto lists AMD's Board of Directors on each relevant date.

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SILICON VALLEY

1

DEFENDANTS' NOTICE OF MOTION, MOTION TO
DISMISS, AND SUPPORTING MEMORANDUM
CASE NO. 4:15-cv-01890-YGR

1    3:14-cv-226 (N.D. Cal.) ("*Hatamian*").  The original *Ha* and *Hamilton* complaints merely

2    parroted the Court's decision in *Hatamian*, recited biographical information about the parties in

3    each action, and asked the Court to take the extraordinary step of divesting AMD of the right to

4    investigate and, if necessary, bring suits in its own name.  Acknowledging these boilerplate

5    allegations were insufficient, Plaintiffs amended their complaints, but the amended complaints

6    cure none of the deficiencies in the earlier complaints and, in fact, weaken Plaintiffs' claims.

7            The *Ha* and *Hamilton* Plaintiffs seek to take from AMD's Board of Directors the right to

8    bring claims on AMD's behalf against certain current and former directors and officers of AMD

9    for allegedly failing to monitor or prevent the earnings guidance misses that formed the basis for

10   the *Hatamian* action.  However, Delaware law (which governs here because AMD is a Delaware

11   corporation) requires that shareholders first demand that a company's Board of Directors

12   investigate and determine whether to pursue such claims *before* a shareholder may bring them

13   derivatively on a company's behalf.  Delaware courts only excuse this demand where the

14   directors to whom demand would be made have a "substantial likelihood" of "personal liability."

15   *Rales v. Blasband*, 634 A.2d 927, 936 (Del. 1993).  However, the failure-of-oversight claims that

16   supposedly create a substantial likelihood of personal liability in these cases are "possibly the

17   most difficult theory in corporation law upon which a plaintiff might hope to win a judgment."

18   *In re Caremark Int'l Inc. Deriv. Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996).  They are particularly

19   difficult "[w]here, as here, directors are exculpated from liability except for claims based on

20   'fraudulent,' 'illegal' or 'bad faith' conduct" and require a derivative plaintiff to "show that a

21   majority of the [directors] knowingly engaged" in fraudulent, illegal, or bad faith conduct.  *Wood*

22   *v. Baum*, 953 A.2d 136, 141 (Del. 2008).  For this reason, Delaware only permits such claims to

23   proceed via derivative suits in "rare" circumstances involving the most "egregious" conduct.  In

24   particular, "[t]o excuse demand based on an asserted *Caremark* claim, Plaintiffs must plead

25   particularized facts to show that '(a) the directors utterly failed to implement any reporting or

26   information system or controls; or (b) having implemented such a system or controls,

27   consciously failed to monitor or oversee its operations, thus disabling themselves from being

28   informed of risks or problems requiring their attention.'"  *In re Yahoo! Inc. S'holder Deriv.*

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
SILICON VALLEY

2

DEFENDANTS' NOTICE OF MOTION, MOTION TO
DISMISS, AND SUPPORTING MEMORANDUM
CASE NO. 4:15-cv-01890-YGR

1   *Litig.*, 153 F. Supp. 3d 1107, 1121 n.7 (N.D. Cal. 2015) (quoting *Stone ex rel. AmSouth*

2   *Bancorporation v. Ritter*, 911 A.2d 362, 370 (Del. 2006)).[2]  These cases contain no such

3   allegations.  The original complaints were a Cliff's Notes version of the *Hatamian* action and the

4   amended complaints are the long-form summary.  The simple repetition of the allegations in the

5   *Hatamian* action—no matter how detailed—and the conclusory charge that AMD's Board of

6   Directors failed to prevent the earnings shortfalls on which that case was premised falls far short

7   of the "heavy burden" Delaware law imposes on putative derivative plaintiffs claiming demand

8   futility for a failure of oversight claim.  *Levine v. Smith*, 591 A.2d 194, 207 (Del. 1991),

9   *overruled in part on other grounds by Brehm v. Eisner*, 746 A.2d 244, 253 (Del. 2000).  Indeed,

10  Plaintiffs essentially ask the Court to re-write decades of Delaware law to hold that any time a

11  corporation faces a securities class action, its Board of Directors is also immediately rendered

12  powerless to determine who, if anyone, it wishes to sue for the alleged misconduct.

13          In addition, Plaintiffs' amended complaints provide a further basis for dismissal because

14  they require Plaintiffs to plead demand futility with respect to the current members of AMD's

15  Board—not the members in place in 2015, when the original complaints were filed.  Under

16  Delaware law, the demand futility allegations in any amended complaint "must be assessed by

17  reference to the board in place *at the time when the amended complaint is filed.*"  *Braddock v.*

18  *Zimmerman*, 906 A.2d 776, 786 (Del. 2006) (emphasis added); *Louisiana Mun. Police Emps.'*

19  *Ret. Sys. v. Wynn*, 829 F.3d 1048, 1058 (9th Cir. 2016).  And for good reason.  Until derivative

20  claims are "validly in litigation," the Board has a "right and duty to control corporate litigation . .

21  . to ensure that through derivative suits shareholders do not improperly seize corporate powers."

22  *Braddock*, 906 A.2d at 785 (quoting *Harris v. Carter*, 582 A.2d 222, 230 (Del. Ch. 1990)).

23  Tellingly, Plaintiffs neither (i) made a demand on AMD's current Board of Directors before

24  filing their amended complaints nor (ii) alleged that doing so would have been futile.  In so

25  doing, they effectively concede that AMD's current Board could dispassionately evaluate these

26  putative claims and also make clear that these cases are not—and have never been—about

27  _____

28  [2] So difficult are these claims to plead that, among reported decisions since January 2010, more than 86 percent have been dismissed for failure to plead demand futility.  *See* Appendix B.

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW
SILICON VALLEY

3

DEFENDANTS' NOTICE OF MOTION, MOTION TO
DISMISS, AND SUPPORTING MEMORANDUM
CASE NO. 4:15-cv-01890-YGR

making sure AMD pursues all appropriate claims.  Stripped bare, these lawsuits are simply an attempt by two shareholders to usurp AMD's right to bring suit in its own name and generate legal fees for their personal lawyers in the process.  There is no basis to elevate the views of these two shareholders over the hundreds of thousands of other shareholders who elected AMD's current Board of Directors.  Plaintiffs' claims should now be dismissed with prejudice.

## II.     FACTUAL ALLEGATIONS OF THE COMPLAINTS

The *Ha* and *Hamilton* Complaints are based entirely on the allegations contained in the *Hatamian* Complaint, which are now familiar to the Court.[3]  *Compare Hamilton* ¶¶ 37-91 *and Ha* ¶¶ 39-131 *with* Ex. 1 (*Hatamian*, No. 3:14-cv-226, Dkt. 61 (Corrected Amended Complaint) (N.D. Cal. June 11, 2014)).  The central claim in the *Ha* and *Hamilton* Complaints is that AMD's Board of Directors "failed to correct [the] materially false and misleading statements and omissions regarding the Llano [microprocessor] made by Officer Defendants"  *Hamilton* ¶¶ 23-28; *see also Ha* ¶ 1.  The Complaints allege that, as a result, AMD lost credibility, suffered damage to its reputation and impairment to its ability to raise capital, and has expended significant sums of money on litigation and settlement costs in the *Hatamian* matter.  *Hamilton* ¶¶ 97-100; *Ha* ¶¶ 168, 174, 179, 186, 192.  (While both Plaintiffs reference the recent settlement of the *Hatamian* matter, *Hamilton* ¶ 10; *Ha* ¶ 5, they ignore the fact that the *Hatamian* settlement was paid entirely by AMD's insurers and resulted in recovery of $0.023 per share, net of expenses—far less than any of the examples that class counsel in *Hatamian* offered the Court as comparable settlements.  *See* Exs.10-11.)

The *Hamilton* Complaint attempts to transform these facts into causes of action for breach of fiduciary duty, corporate waste, and unjust enrichment.  The *Ha* Complaint attempts to plead (i) violations of Section 14(a) of the Exchange Act and SEC Rule 14a-9, which prohibit the solicitation of misleading proxy solicitations; (ii) three separate breaches of fiduciary duty (for failing to maintain internal controls, failing to implement proper controls and manage the company, and disseminating false and misleading information); (iii) "abuse of control"; and (iv)

---

[3]  The claims are further described in Defendants' Motion for Summary Judgment (Dkt. No. 254) in *Hatamian v. Advanced Micro Devices, Inc.*, No. 3:14-cv-226 (N.D. Cal. Apr. 25, 2017).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

4

DEFENDANTS' NOTICE OF MOTION, MOTION TO
DISMISS, AND SUPPORTING MEMORANDUM
CASE NO. 4:15-cv-01890-YGR

1  "gross mismanagement." While the Complaints repeat the *Hatamian* action in varying levels of

2  detail, they are bereft of facts showing any interestedness or lack of independence of the

3  members of AMD's Board of Directors.  To avoid making the requisite particularized allegations

4  of what specific defendants allegedly "knew," the Complaints broadly lump the defendants

5  together as "Officer Defendants," "Director Defendants," and "Individual Defendants" and offer

6  a series of boilerplate and conclusory allegations about what each group knew, did, or failed to

7  do.  *See*, *e.g.*, *Hamilton* ¶¶ 29-30, 32-35, 106; *Ha* ¶¶ 24, 27, 37.[4]

8       The Amended *Hamilton* Complaint now details the unremarkable proposition that

9  AMD's Board "received regular . . . updates" throughout 2011 and 2012 (*Hamilton* ¶ 107) and

10  cites examples of such reports (*see*, *e.g.*, ¶¶ 43-44, 47, 51, 60).[5]  The *Ha* Complaint offers

11  similarly vague allegations in support of its claim of demand futility and claims that "a demand

12  would have been a futile and useless act with respect to each and every one of the Individual

13  Defendants" because some of them served on AMD's Board during the period relevant to the

14  *Hatamian* case and because of purported conflicts of interest.  *Ha* ¶ 147.

15  **III.   LEGAL STANDARDS FOR DEMAND FUTILITY**

16       **A.   Derivative Suits Are a Narrow Exception to the General Rule that Boards of
             Directors Control Corporate Actions**

17

18       "[T]he general rule of American law is that the board of directors controls a corporation.

19  Accordingly, strict compliance with [Federal Rule of Civil Procedure] 23.1 and the applicable

20  substantive law is necessary before a derivative suit can wrest control of an issue from the board

21  of directors."  *Potter v. Hughes*, 546 F.3d 1051, 1058 (9th Cir. 2008).  "Stockholders cannot

22  shortcut the board's control over the corporation's litigation decisions without first complying

23  with" Rule 23.1.  *City of Birmingham Ret. & Relief Sys. v. Good*, 2017 WL 6397490, at *4 (Del.

24

25  [4]  The *Ha* Complaint responded to Defendants' original motion in form (not substance) by
     naming each director and repeating identical, boilerplate allegations against them.  *See Ha* ¶¶
     148-58.

26

27  [5]  *Hamilton*'s remaining futility allegations are even more vapid: (i) Dr. Su is a defendant in
     *Hatamian*, (ii) certain Directors serve on AMD's Audit and Finance and Nominating and
     Corporate Governance Committees, and (iii) AMD's Directors were paid for their service on the

28  Board.  ¶¶ 109-112.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

5

DEFENDANTS' NOTICE OF MOTION, MOTION TO
DISMISS, AND SUPPORTING MEMORANDUM
CASE NO. 4:15-cv-01890-YGR

Dec. 15, 2017).  Rule 23.1 provides, in relevant part, that a shareholder derivative complaint must "state with particularity any effort by the plaintiff to obtain the desired action from the directors . . . and the reasons for not obtaining the action or not making the effort."  Fed. R. Civ. P. 23.1(b)(3).  Whether allegations meet the requirements of Rule 23.1 is determined by the laws of the company's state of incorporation.  *See In re Silicon Graphics Sec. Litig.*, 183 F.3d 970, 990 (9th Cir. 1999).  AMD is incorporated in Delaware.  *Hamilton* ¶ 1; *Ha* ¶ 11.  Under Delaware law, "the right of a stockholder to prosecute a derivative suit is limited to situations where the stockholder has demanded that the directors pursue the corporate claim and they have wrongfully refused to do so or where demand is excused because the directors are incapable of making an impartial decision regarding such litigation."  *In re Accuray, Inc. S'holder Deriv. Litig.*, 757 F. Supp. 2d 919, 926 (N.D. Cal. 2010) (quoting *Rales*, 634 A.2d at 932).  This demand requirement is rooted in "the basic principle of corporate governance that the decisions of a corporation – including the decision to initiate litigation – should be made by the board of directors."  *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 101 (1991).  A complaint that does not meet these requirements must be dismissed.  *See Brehm*, 746 A.2d at 267.

### B.     Demand Futility is Reserved for "Rare Cases" of "Egregious" Misconduct

Where, as here, the alleged misconduct is board inaction, the *Rales* test applies to determine whether Plaintiffs have adequately pleaded demand futility under Delaware law. *Oswald v. Humphreys*, 2016 WL 6582025, at *1 (N.D. Cal. Nov. 7, 2016); *see also Rales*, 634 A.2d at 933–34.  Under the *Rales* test, "a court must determine whether or not the particularized factual allegations of a derivative stockholder complaint create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand."  *Rales*, 634 A.2d at 934.  "In the context of a pre-suit demand, directors are entitled to a presumption that they fulfilled their fiduciary duties, and 'the burden is upon the plaintiff in a derivative action to overcome that presumption' with particularized factual allegations."  *In re Bidz.com, Inc. Deriv. Litig.*, 773 F. Supp. 2d 844, 850 (C.D. Cal. 2011) (quoting *Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1048-49 (Del. 2004)).  In other words, "[t]o demonstrate that

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

6

DEFENDANTS' NOTICE OF MOTION, MOTION TO
DISMISS, AND SUPPORTING MEMORANDUM
CASE NO. 4:15-cv-01890-YGR

demand upon the [AMD] board would have been futile, [Plaintiffs] must . . . allege with particularity that at least [half of the] Directors were not independent or disinterested." *Oswald*, 2016 WL 6582025, at *1 (citing *Beam*, 845 A.2d at 1046).  However, a director is only interested in those "rare cases" where his actions were "so egregious [that] . . . a substantial likelihood of director liability . . . exists." *Aronson v. Lewis*, 473 A.2d 805, 815 (Del. 1984).  A "mere threat" of liability is insufficient. *Silicon Graphics*, 183 F.3d at 990.[6]  As the Delaware Supreme Court has explained, this standard places a "heavy burden" on plaintiffs alleging demand futility—one that is "more onerous than that required to withstand a Rule 12(b)(6) motion to dismiss." *Levine*, 591 A.2d at 207.  To meet this burden, "facts specific to *each* director must be alleged to support a finding of demand futility." *Brown v. Moll*, 2010 WL 2898324, at *3 (N.D. Cal. July 21, 2010) (emphasis added).

### C. Alleging Demand Futility Is Even Harder Because AMD's Articles of Incorporation Strictly Limit Its Directors' Potential Liability

Further heightening Plaintiffs' burden is that Article 8 of AMD's Restated Certificate of Incorporation limits its directors' liability to the maximum extent permitted by Delaware law:

> A director of the corporation shall not be personally liable to the corporation or its stockholders for monetary damages for breach of fiduciary duty as a director, except liability (i) for any breach of the director's duty of loyalty to the corporation or its stockholders, (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law, (iii) under Section 174 of the Delaware General Corporation Law, or (iv) for any transaction from which the director derived an improper personal benefit.
>
> If the Delaware General Corporation Law hereafter is amended . . . then **the liability of a director of the corporation, in addition to the limitation on personal liability provided herein, shall be limited to the fullest extent permitted** by the amended Delaware General Corporation Law.

*See* Ex. 2 at p. 3 (emphasis added).  In other words, AMD's Directors face no personal liability for negligence or any nonintentional breach of their duty of care.  This type of clause is "appropriately considered at the pleading stage in assessing demand futility," and requires

---

[6] Under *Rales*, a reasonable doubt about a director's independence could also arise if the plaintiff can allege with particularity that a director was "dominated" or "controlled" by an individual or entity interested in the subject transaction. *Grobow v. Perot*, 539 A.2d 180, 189 (Del. 1988), *overruled on other grounds by Brehm*, 746 A.2d at 253.

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SILICON VALLEY

7

DEFENDANTS' NOTICE OF MOTION, MOTION TO
DISMISS, AND SUPPORTING MEMORANDUM
CASE NO. 4:15-cv-01890-YGR

Plaintiffs to "plead with particularity [a] 'substantial likelihood that [the Board Members'] conduct falls outside the exemption.'" *In re Polycom, Inc.*, 78 F. Supp. 3d 1006, 1013 (N.D. Cal. 2015) (quoting *In re Baxter Int'l, Inc. S'holders Litig.*, 654 A.2d 1268, 1270 (Del. Ch. 1995)). Thus, Plaintiffs can only plead the requisite "'substantial likelihood' of personal liability" if they can allege "with particularity actual director involvement in a decision or series of decisions that violated positive law," such that the directors "knowingly" breached their fiduciary duties or "consciously failed to act after learning about evidence of illegality" through a "red flag." *South v. Baker*, 62 A.3d 1, 15 (Del. Ch. 2012); *see also In re Autodesk, Inc., S'holder Deriv. Litig.*, 2008 WL 5234264, at *9–10 (N.D. Cal. Dec. 15, 2008) (where corporation "has adopted an exculpatory provision under Delaware law, liability is foreclosed for all but the most egregious breaches of duty – self-dealing [ ] and intentional bad faith"); *Good*, 2017 WL 6397490, at *5.

## D.     Claims Based on Insufficient Board Oversight Require Finding of Bad Faith

Plaintiffs' burden grows even heavier where, as here, their only claim is that the Directors failed to prevent harm to AMD. *Hamilton* ¶¶ 23-28; *Ha* ¶¶ 1,5, 142.  Delaware courts have observed that this type of "failure of oversight" theory, commonly called a *Caremark* claim," is "possibly the ***most difficult theory*** in corporation law upon which a plaintiff might hope to win a judgment." *Caremark Int'l*, 698 A.2d at 967.  "To excuse demand based on an asserted *Caremark* claim, Plaintiffs must plead particularized facts to show that '(a) the directors utterly failed to implement any reporting or information system or controls; or (b) having implemented such a system or controls, consciously failed to monitor or oversee its operations, thus disabling themselves from being informed of risks or problems requiring their attention.'" *In re Yahoo!*, 153 F. Supp. 3d at 1121 n.7 (quoting *Stone*, 911 A.2d at 370).  "In either case, imposition of liability requires a showing that the directors knew that they were not discharging their fiduciary obligations." *Stone*, 911 A.2d at 370.  As Delaware's Chief Justice Strine put it (when serving on Delaware's Chancery Court), "director liability for failure to monitor require[s] a finding that the directors['] . . . indolence was so persistent that it could not be ascribed to anything other than a knowing decision not to even try to make sure the corporation's officers had developed and were implementing a prudent approach to ensuring law compliance." *Desimone v. Barrows*,

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SILICON VALLEY

8

DEFENDANTS' NOTICE OF MOTION, MOTION TO
DISMISS, AND SUPPORTING MEMORANDUM
CASE NO. 4:15-cv-01890-YGR

1   924 A.2d 908, 935 (Del. Ch. 2007).  In other words, Plaintiffs must plead factual allegations

2   showing that the directors "deliberately misinform[ed] shareholders about the business of the

3   corporation."  *In re Yahoo!*, 153 F. Supp. 3d at 1120 (quoting *In re Citigroup S'holder Deriv.*

4   *Litig.*, 964 A.2d 106, 132 (Del. Ch. 2009)); *Polycom*, 78 F. Supp. 3d at 1016 (same).

5   **IV.   PLAINTIFFS' AMENDED COMPLAINTS FAIL BECAUSE PLAINTIFFS DID
       NOT MAKE A DEMAND ON AMD'S CURRENT BOARD OF DIRECTORS**

6

7           Delaware law requires that a shareholder who amends a derivative complaint "after a new

8   board of directors is in place" must make a new demand on the new Board unless (1) "the

9   original complaint was well pleaded as a derivative action" *and* (2) "the original complaint

10  satisfied the legal test for demand excusal.  *Braddock*, 906 A.2d at 786.[7]  This rule is an

11  outgrowth of the basic principle that unless a derivative claim is "validly in litigation," the Board

12  has a "right and duty to control corporate litigation . . . to ensure that through derivative suits

13  shareholders do not improperly seize corporate powers."  *Braddock*, 906 A.2d at 785 (quoting

14  *Harris*, 582 A.2d at 230).[8]  In other words, voluntarily amending will "trigger a new requirement

15  to make demand if the earlier complaint could not have survived a motion to dismiss, even if it

16  had not actually been dismissed."  *In re Nyfix, Inc. Derivative Litig.*, 567 F. Supp. 2d 306, 311

17  (D. Conn. 2008).  Simply put, Plaintiffs cannot avoid scrutiny of their original complaints by

18  amending them.  And their decision to amend—rather than defend—their original complaints

19  effectively concedes that the original complaints were insufficient.  Nonetheless, neither

20  amended Complaint pleads any futility allegations against AMD's current Board.  This alone

21  provides basis to dismiss both Complaints.[9]

22  _____

23  [7] A third requirement not relevant here is that the amended complaint challenge the same
    conduct as the original complaint.  *Braddock*, 906 A.2d at 786.  To the extent there is identifiable
    conduct challenged in either complaint or amended complaint, they appear to be similar.

24  [8] "[F]or purposes of determining whether demand is required before filing an amended derivative
    complaint, the term 'validly in litigation' means a proceeding that *can* or has survived a motion
25  to dismiss."  *Braddock*, 906 A.2d at 779 (emphasis added).

26  [9] Mr. Hamilton attempts to side-step this clear requirement of Delaware law by arguing that the
    order temporarily staying this action (Dkt. No. 32) granted him *carte blanche* to amend his
27  claims indefinitely without making a new demand on the Board.  *See Hamilton* ¶ 105.  Not so.
    The stay order provides that the Board in place on April 27, 2015 (the date the original *Hamilton*
28  Complaint was filed) would be the relevant Board for "determining whether Plaintiffs **have pled**

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

9

DEFENDANTS' NOTICE OF MOTION, MOTION TO
DISMISS, AND SUPPORTING MEMORANDUM
CASE NO. 4:15-cv-01890-YGR

## V.  PLAINTIFFS FAIL TO ALLEGE THAT DEMAND ON AMD'S 2015 BOARD WOULD HAVE BEEN FUTILE

### A.  There Are No Facts Suggesting AMD's Board Knew Of Misconduct

The *Hamilton* Complaint asserts that "[e]ach of the Director Defendants, due to his participation in the wrongful acts alleged and his potential individual financial exposure, is not disinterested and cannot exercise independent business judgment" and further alleges that the "directors knew of the unlawful acts[] [and] participated in the actions of their colleagues." *Hamilton* ¶ 106.  The *Ha* Complaint likewise alleges that "[t]here is reason to doubt that all Board members have complied with their fiduciary duties" because "the Company has actively failed to establish or enforce internal policies to inform shareholders about the misstatements and omissions relating to Llano" *Ha* ¶ 147(a).  These allegations fail for several reasons.

*First,* the Complaints contain only generalized and conclusory allegations.  Plaintiffs recite a series of events that occurred, then declare that those events constitute fraud and that the entire Board "participat[ed] in the wrongful acts."  Which acts?  Which Board members?  How did they participate?  Did the Board know that certain reports it received were untrue?  Should they have?  Which ones?  How?  Or maybe the reports were true, but the Board failed to properly consider them?  Why did the Board decide to act or not act?  Failure to plead facts that answer any of these questions is fatal to a claim of demand futility.  *See In re Yahoo!*, 153 F. Supp. 3d at 1120 ("Plaintiffs must plead 'fraudulent,' 'illegal,' or 'bad faith conduct,' and particularized facts demonstrating that the Directors acted with scienter.").[10]

---

facts sufficient to" establish "that a **pre-litigation** demand on the Company's Board of Directors would have been futile."  Dkt. No. 32 ¶ 6 (emphasis added).  It is expressly retrospective and does not by its terms or by its context purport to provide that the April 2015 Board would be the relevant Board for determining whether plaintiffs could plead, at some future date in a future complaint, that the post-litigation/pre-amendment demand required by *Braddock* would be futile.

[10]  The *Ha* Complaint is uniquely weak in this regard.  Of the 11 directors on the date the original *Ha* Complaint was filed, only five were also Board members or executives when the alleged misstatements in *Hatamian* were made.  *Compare* Ex. 1 ¶ 267 (final alleged misstatement occurred on **July 19, 2012**) *with* Ex. 6 at pp. 6-11 (AMD's 2015 Proxy Statement) (noting that only five of the eleven directors who were named in the *Ha* Complaint had joined the Board prior to **August 2012**).  In other words, a majority (6 out of 11 members) of AMD's Board of Directors at the time the original *Ha* Complaint was filed were completely unaffiliated with AMD when the alleged misstatements in *Hatamian* were made and were not part of the Board that allegedly failed to prevent that conduct.  This alone warrants dismissal of the *Ha* Complaint.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

10

DEFENDANTS' NOTICE OF MOTION, MOTION TO
DISMISS, AND SUPPORTING MEMORANDUM
CASE NO. 4:15-cv-01890-YGR

*Second*, it is not enough to make the generalized allegation that the Board "allowed" problems to occur.  Delaware courts have long recognized that "most of the decisions that a corporation, acting through its human agents, makes are, of course, not the subject of director attention."  *Stone*, 911 A.2d at 372 (quoting *Caremark*, 698 A.2d at 968).  "[O]rdinary business decisions that are made by officers and employees deeper in the interior of the organization can . . . vitally affect the welfare of the corporation and its ability to achieve its various strategic and financial goals," *Caremark*, 698 A.2d at 968, and directors are entitled to rely on management to supervise and synthesize such activity for the Board.  *In re Am. Int'l Group, Inc. Deriv. Litig.*, 700 F. Supp. 2d 419, 435-36 (S.D.N.Y. 2010) (citing *In re HealthSouth Corp. S'holders Litig.*, 845 A.2d 1096, 1107 (Del. Ch. 2003), *aff'd mem.*, 847 A.2d 1121 (Del. 2004)).  For that reason, "[a] stockholder cannot displace the board's authority [over the corporation's claims] simply by describing the calamity and alleging that it occurred on the directors' watch."  *South*, 62 A.3d at 14-15.  Here, each of the statements challenged in *Hatamian* represented management's distillation of highly technical, confidential manufacturing and sales data and forecasts—or, in the words of the *Hamilton* Complaint, updates on the "intricate and complex process" that is "[t]he manufacturing of APUs."  *Hamilton* ¶ 5.  And, as the *Hamilton* Complaint makes clear, information about Llano was often presented alongside a sea of information about other processes and technologies.  *See*, *e.g.*, *id.* ¶¶ 44, 47.  This is exactly the sort of information that could "vitally affect the welfare of the corporation," *Caremark*, 698 A.2d at 968, without being a focus of Board decision-making, and neither the *Ha* Complaint nor the *Hamilton* Complaint pleads any facts to the contrary.  There are no allegations regarding warnings to the Board from government or regulatory investigations, or internal or external auditors or whistleblower reports, and no public statements or testimony from the Board purporting to show board awareness of particular facts.  Indeed, a "director's duty to be informed does not 'require directors to possess detailed information about all aspects of the operation of the enterprise' because that is 'inconsistent with the scale and scope of efficient organization size in this technological age.'" *In re Yahoo!*, 153 F. Supp. 3d at 1121 (quoting *Caremark*, 698 A.2d at 971).  "Without a connection to the board, a corporate trauma will not lead to director liability. Without a

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

11

DEFENDANTS' NOTICE OF MOTION, MOTION TO
DISMISS, AND SUPPORTING MEMORANDUM
CASE NO. 4:15-cv-01890-YGR

1   substantial threat of director liability, a court has no reason to doubt the board's ability to address

2   the corporate trauma and evaluate a related demand." *South*, 62 A.3d at 15.

3          *Third*, even if Plaintiffs could establish that the Board members knew (or were obligated

4   to know) the millions of detailed facts that informed AMD's management's estimates about

5   Llano's production and sales so that the Board could independently validate those judgments,

6   "the Complaint[s] do[] not contain specific factual allegations that reasonably suggest sufficient

7   board involvement in the preparation of the disclosures." *Citigroup*, 964 A.2d at 134.  In other

8   words, the Complaints "do[] not sufficiently allege that the director defendants had knowledge

9   that any disclosures or omissions were false or misleading or that the director defendants acted in

10  bad faith in not adequately informing themselves." *Id.*  Therefore, there is nothing "that would

11  allow [the Court] to reasonably conclude that the director defendants face a substantial likelihood

12  of personal liability." *Id.*; *see also Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust* v.

13  *Lundgren*, 579 F. Supp. 2d 520, 532 (S.D.N.Y. 2008) (rejecting claim of director liability absent

14  "particularized factual allegations indicating that any of these directors knew or should have

15  known that any of the allegedly misleading statements were false or incomplete").  Simply put,

16  even if the statements challenged in *Hatamian* were materially misleading (and, to be sure, they

17  were not), there are no facts in the *Ha* Complaint or *Hamilton* Complaint to suggest that the

18  Directors could have possibly known that to be the case.[11]

19          **B.      Documents Produced In The *Hatamian* Case Cannot Show Demand Futility**

20          The *Hamilton* Complaint cites roughly two dozen documents produced in the *Hatamian*

21

22  [11]  To the extent that the *Ha* Complaint claims the Board failed to ensure that the Company's
financial statements were prepared in accordance with GAAP, their allegations are similarly
23  deficient.  *See Ha* ¶¶ 132-34.  Plaintiffs have failed to plead particularized facts establishing that
the financial statements were in fact materially misstated (they have never been restated) or that
24  any Board member was involved in the preparation and release of allegedly deficient financial
statements; or that  any Board member knew of those alleged deficiencies and consciously
25  decided  not to take action.  *See Rattner v. Bidzos*, 2003 WL 22284323, at *12 (Del. Ch. Sept.
30, 2003) ("The Amended Complaint . . . summarizes numerous SEC rules . . . and GAAP
26  standards. However, conspicuously absent . . . are particularized facts regarding the Company's
internal financial controls during the Relevant Period, notably the actions and practices of [the]
27  audit committee. The Amended Complaint also is similarly wanting of any facts regarding the
Board's involvement in the preparation of the financial statements and the release of financial
28  information[.]" (footnote omitted)).

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SILICON VALLEY

12

DEFENDANTS' NOTICE OF MOTION, MOTION TO
DISMISS, AND SUPPORTING MEMORANDUM
CASE NO. 4:15-cv-01890-YGR

1    matter.  These documents describe some of the circumstances that led to AMD missing its

2    earnings forecasts in 2011 and 2012.  *See*, *e.g.*, ¶¶ 43-44, 47, 51, 60.  They add nothing to the

3    question raised by this motion of whether demand on AMD's Board would have been futile.  To

4    the extent Mr. Hamilton claims that they do contain information relevant to that question, they

5    should be disregarded because they do not reflect facts "known to Plaintiffs when they elected

6    not to make a demand."  *In re First Solar Derivative Litig.*, 2016 WL 3548758, at *14 (D. Ariz.

7    June 30, 2016); *see also Rales*, 634 A.2d at 934 ("[A] court must determine whether or not the

8    particularized factual allegations of a derivative stockholder complaint create a reasonable doubt

9    that, *as of the time the complaint is filed*, the board of directors could have properly exercised its

10   independent and disinterested business judgment in responding to a demand") (emphasis added);

11   *Beam*, 845 A.2d at 1056 ("In general, derivative plaintiffs are not entitled to discovery in order to

12   demonstrate demand futility").[12]

13        **C.      The *Hatamian* Complaint Does Not Provide A Basis To Allege Futility**

14        The *Ha* Complaint does not cite documents from the *Hatamian* action and instead relies

15   on the *Hatamian* complaint.  This too is irrelevant to the question of demand futility—the

16   *Hatamian* Complaint only mentions AMD's Board of Directors three times in 113 pages, and

17   never in any substantive context.  In any event, allegations that simply repeat other unproven

18   allegations are insufficient to plead anything and should be disregarded.  *See RSM Prod. Corp. v.*

19   *Fridman*, 643 F. Supp. 2d 382, 403 (S.D.N.Y. 2009) ("[P]aragraphs in a complaint that are either

20   based on, or rely on, complaints in other actions that have been dismissed, settled, or otherwise

21   not resolved, are, as a matter of law, immaterial within the meaning of" Rule 12(f).) (citing

22   *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 892-94 (2d Cir. 1976)); *In re CRM*

23

---

24   [12] Moreover, Mr. Hamilton's use of material produced in the *Hatamian* case violates the terms of
     this Court's orders.  Here, the order staying the *Hamilton* action provided that AMD would invite

25   the *Hamilton* plaintiffs to participate in any mediations in the *Hatamian* action and, as such,
     would provide the *Hamilton* Plaintiffs with "copies of all discovery produced by defendants to

26   the plaintiffs in the [*Hatamian*] Action," but only "[s]ubject to the entry of an appropriate
     protective order."  Dkt. 32 ¶ 4.  The *Hamilton* Plaintiffs subsequently agreed to be bound by the

27   protective order in the *Hatamian* Action. Ex. 14 at 1.  The *Hatamian* Protective Order
     specifically prohibits anyone from using information produced in the *Hatamian* case in

28   connection with any other litigation.  *See Hatamian*, No. 4:14-cv-226-YGR, Dkt. 136, ¶ 7.1.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

13

DEFENDANTS' NOTICE OF MOTION, MOTION TO
DISMISS, AND SUPPORTING MEMORANDUM
CASE NO. 4:15-cv-01890-YGR

1    *Holdings, Ltd. Sec. Litig.*, 2012 WL 1646888, at *26 (S.D.N.Y. May 10, 2012) ("Plaintiffs'

2    citation to 'unproven allegations' made in [earlier-filed] complaints do not constitute factual

3    allegations," so "Plaintiffs may not rely on these sources as evidence of the alleged fraud.").

4       **D.     Committee Service Does Not Establish a Substantial Likelihood of Liability**

5          Aside from echoing the *Hatamian* case in various forms, Plaintiffs offer little explanation

6    for why demand on AMD's Board would have been futile.  Both the *Ha* and *Hamilton*

7    Complaints allege that certain Directors' service on AMD's Audit and Finance Committee and

8    Nominating and Corporate Governance Committee renders those directors incapable of

9    exercising their fiduciary duties.  *Hamilton* ¶¶ 110-111; *Ha* ¶¶ 147(i)-(j).[13]  But there are no facts

10   to connect the Directors' committee service with the alleged misconduct—the only information

11   Plaintiffs provide in these paragraphs (besides the bare fact that certain Directors served on

12   certain committees) are the general responsibilities of each committee.[14]  Merely serving on a

13   board committee does not preclude directors from exercising independent judgment of

14   shareholder demands.  *In re CNET Networks, Inc. S'holder Deriv. Litig.*, 483 F. Supp. 2d 947,

15   963 (N.D. Cal. 2007) ("Mere membership on a committee or board, without specific allegations

16   as to defendants' roles and conduct, is insufficient to support a finding that directors were

17   conflicted."); *In re Linear Tech. Corp. Deriv. Litig.*, 2006 WL 3533024, at *2-3 (N.D. Cal. Dec.

18   7, 2006).  Nor is committee service sufficient to establish scienter for the alleged misconduct—it

19   is "contrary to well-settled Delaware law" to "infer that the directors had a culpable state of mind

20

21   [13]  The Directors in question are Defendants Barnes, Caldwell, Chow, Harding, Householder, and
     Inglis (Audit and Finance Committee) and Defendants Claflin, Barnes, Caldwell, Chow,

22   Donofrio, Harding, Householder, and Denzel (Nominating and Corporate Governance
     Committee).  *Hamilton* ¶¶ 110-111; *Ha* ¶¶ 147(i)-(j).  However, Mr. Harding joined AMD's

23   Board *after* all of the alleged misstatements identified in the *Hatamian* action, Ex. 6 at p. 9,
     rendering particularly dispositive the *Hamilton* and *Ha* plaintiffs' failure to identify what he

24   knew and how he failed to oversee certain still-unspecified activity or take certain still-
     unspecified actions.

25   [14]  *See, e.g., Hamilton* ¶ 110 ("The Audit and Finance Committee's Charter in effect during the
     Relevant Period provides that the committee is responsible for:  (i) compliance with legal and

26   regulatory requirements; (ii) the integrity of the Company's financial statements; (iii)
     performance of the Company's internal audit; and (iv) the hiring and performance of the

27   Company's independent auditor.  Additionally, the Audit and Finance Committee is charged with
     discussing with management the Company's earnings press releases and financial information

28   provided to analysts and rating agencies.").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

14

DEFENDANTS' NOTICE OF MOTION, MOTION TO
DISMISS, AND SUPPORTING MEMORANDUM
CASE NO. 4:15-cv-01890-YGR

based on allegations that certain board members served on an audit committee and, as a consequence, should have been aware of the facts on which" Plaintiffs' claims were based. *Wood*, 953 A.2d at 142-43; *In re Yahoo!*, 153 F. Supp. 3d at 1123 (same) *Polycom*, 78 F. Supp. 3d at 1020 (same); *see also Baxter Int'l*, 654 A.2d at 1270-71 (plaintiff cannot presume "that employee wrongdoing would not occur if directors performed their duty properly").  Indeed, the allegation that the Audit Committee received and reviewed a great deal of information is a fatal flaw in the *Ha* Plaintiffs' assertion that the Board "fail[ed] to implement any existing internal corporate controls."  *Ha* ¶ 1; *see In re Gen. Motors Co. Deriv. Litig.*, 2015 WL 3958724, at *15 (Del. Ch. June 26, 2015) (presence of committee meant plaintiff "concede[d] that the Board was exercising some oversight, albeit not to the Plaintiff's hindsight-driven satisfaction"), *aff'd*, 133 A.3d 971 (Del. 2016).  Plaintiffs cannot show that the Board "utterly failed to implement any reporting or information system or controls," *Stone*, 911 A.2d at 370, when they concede that the Board established committees and charged them with specific duties, but fail to identify specific shortcomings in their performance that caused the circumstances of which they complain.

### E. Dr. Su's Status as AMD's CEO and a Defendant in the *Hatamian* Action Does Not, By Itself, Establish a Substantial Likelihood of Liability

Both the *Ha* and *Hamilton* Complaints claim that demand is excused as to Dr. Lisa Su, who is the Company's CEO and was a member of the Board when the original *Ha* and *Hamilton* Complaints were filed.  Plaintiffs allege that Dr. Su was "a defendant in the Securities Class Action" and "faced a substantial likelihood of liability in the Securities Action based upon her actions as an officer of the Company during the Relevant Period."  *Hamilton* ¶ 109; *Ha* ¶ 147(d).  But "merely being named in a lawsuit establishes nothing" for purposes of pleading a substantial likelihood of liability, and "directors do not necessarily lose their ability to exercise independent business judgment merely by virtue of their being officers."  *Gordon v. Bindra*, 2014 WL 2533798, at *11 (C.D. Cal. June 5, 2014) (citing *In re Walt Disney Co. Deriv. Litig.*, 731 A.2d 342, 357 (Del. Ch. 1998), *rev'd in part on other grounds by Brehm*, 746 A.2d 244).  Indeed, Dr. Su was neither AMD's CEO nor on AMD's Board during the *Hatamian* class period.  She was not even employed at AMD for most of the relevant period, and the *Hatamian* action attributes to

1    Dr. Su just two of the more than 100 statements challenged in that case.  Ex. 1 (*Hatamian*, No.

2    3:14-cv-226, Dkt. 61 (Corrected Amended Complaint) (N.D. Cal. June 11, 2014)).

3           **F.      The Existence of Corporate Governance Policies Does Not Excuse Demand**

4           The *Ha* Complaint describes certain of AMD's corporate ethics and governance policies

5    in some detail.  *Ha* ¶¶ 31-35.  However—as with Plaintiffs' claims regarding the Board

6    committees' duties—it is black-letter law that conclusory allegations that corporate governance

7    policies were not followed is insufficient to plead a *Caremark* claim for failure of oversight.  *See*

8    *In re Yahoo!*, 153 F. Supp. 3d at 1121 (quoting *Stone*, 911 A.3d at 373); *see also Baxter Int'l*,

9    654 A.2d at 1270-71.

10          **G.      The Directors' Reasonable Compensation Does Not Excuse Demand**

11          The *Hamilton* Complaint also asserts that the fact that AMD's directors were

12    compensated for their service renders them incapable of fulfilling their fiduciary duties.

13    *Hamilton* ¶ 112(a).  The *Hamilton* Complaint alleges that AMD's directors were annually

14    "granted restricted common stock and options to purchase common stock valued in excess of

15    $170,000 per director."  *Id.*  First, the fact that the directors received grants of stock and stock

16    options (rather than cash) aligns their interest with shareholders.  *See, e.g., In re Oracle Corp.*,

17    867 A.2d 904, 930 & nn.115 & 116 (Del. Ch. 2004) (recognizing and citing authorities for

18    proposition "that many sophisticated commentators believe that it is a good idea that corporate

19    insiders own company stock because having, as Ross Perot would say, 'skin in the game' will

20    tend to align their interests with those of the public stockholders"), *aff'd*, 872 A.2d 960 (Del.

21    2005).  In any event, courts routinely find that awards of significantly greater compensation do

22    not preclude a director from rendering impartial judgment.  *See, e.g., In re Corinthian Colleges,*

23    *Inc. S'holder Deriv. Litig.*, 2012 WL 8502955, at *11 (C.D. Cal. Jan. 30, 2012) (rejecting

24    argument that non-employee Director Defendants were not independent because they will "likely

25    earn in excess of $200,000" in 2011); *Jacobs v. Yang*, 2004 WL 1728521, at *5 (Del. Ch. Aug. 2,

26    2004) (CEO-director was impartial on question of whether company founders breached their

27    fiduciary duties by misappropriating financial benefits for personal gain, even though CEO stood

28    "to lose a significant amount of money in the form of unvested options [over $17 million]" if

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

16

DEFENDANTS' NOTICE OF MOTION, MOTION TO
DISMISS, AND SUPPORTING MEMORANDUM
CASE NO. 4:15-cv-01890-YGR

1    terminated), *aff'd*, 867 A.2d 902 (Del. 2005).

2           To the contrary, "where [as here,] a majority of the directors are . . . outside directors

3    receiving no income other than usual directors' fees[,] the presumption of good faith is

4    *heightened*." *Louisiana Mun. Police Emps.' Ret. Sys. v. Blankfein*, 2009 WL 1422868, at *8

5    (S.D.N.Y. May 19, 2009) (emphasis added) (quoting *Moran v. Household Int'l, Inc.*, 490 A.2d

6    1059, 1074-75 (Del. Ch. 1985), *aff'd*, 500 A.2d 1346 (Del. 1985)).  This is not surprising—if the

7    fact that directors were compensated "were sufficient to show lack of independence, every inside

8    director would be disabled from considering a pre-suit demand."  *In re Sagent Tech., Inc. Deriv.*

9    *Litig.*, 278 F. Supp. 2d 1079, 1089 (N.D. Cal. 2003); *accord In re VeriSign, Inc., Deriv. Litig.*,

10   531 F. Supp. 2d 1173, 1196 (N.D. Cal. 2007) (same).

11          **H.      Merely Serving on the Board Does Not Make a Director Potentially Liable**

12          The *Ha* Complaint asserts that "[a]ll the Board members are potentially liable for the

13   wrongful conduct alleged because all the current Board members were directors during some

14   portion of the Relevant Time Period."  *Ha* ¶ 147(c).  Mr. Ha claims that "all the current Board

15   members were directors during some portion of the Relevant Time Period," Ha ¶ 147(c), which

16   is defined as "from at least the beginning of 2011 through the present," *id.* ¶ 1.  This is circular.

17   The entirety of this allegation is that AMD's directors were directors at some point over the past

18   seven years.  That does nothing to establish the requisite "'fraudulent,' 'illegal,' or 'bad faith

19   conduct,' and particularized facts demonstrating that the Directors acted with scienter" that

20   would permit inferring a substantial likelihood of liability for each director.  *In re Yahoo!*, 153 F.

21   Supp. 3d at 1121 n.7.

22          **I.      Plaintiffs Allege No Facts to Suggest the Board Lacked Independence**

23          Finally, Mr. Ha identifies—for the first time in his Amended Complaint—three purported

24   conflicts of interest that he believes preclude certain directors from fairly considering a pre-suit

25   demand.[15]  *Ha* ¶¶ 147(b), (e)-(h); 149-53.  These claims are meritless.

26   _____

27   [15] The *Hamilton* Complaint claims that AMD's Board would have been unable to "exercise
     independent business judgment on the issue of whether AMD should prosecute this action," but
     does not elaborate on the purported independence issues.  *Hamilton* ¶ 106.  Presumably this

28   boilerplate allegation is a reference to the allegations in that complaint discussed above.

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SILICON VALLEY

17

DEFENDANTS' NOTICE OF MOTION, MOTION TO
DISMISS, AND SUPPORTING MEMORANDUM
CASE NO. 4:15-cv-01890-YGR

1    For Plaintiffs to raise a reasonable doubt about a director's independence under Delaware

2    law, they must allege with particularity that a director was "dominated" or "controlled" by an

3    individual or entity interested in the subject transaction.  *Grobow*, 539 A.2d at 189.

4    Traditionally, directors lack independence from allegedly tainted management only if they share

5    familial or similarly close relationships.  *See, e.g.*, *Beam*, 845 A.2d at 1050 ("[T]o render a

6    director unable to consider demand, a relationship must be of a bias-producing nature.

7    Allegations of mere personal friendship or a mere outside business relationship, standing alone,

8    are insufficient to raise a reasonable doubt about a director's independence.").  Here, Plaintiffs

9    have alleged no facts of any kind with respect to their claim of lack of independence, let alone

10    facts sufficient to meet the stringent standard under Delaware law.

11    *First*, Mr. Ha claims that Directors Caldwell, Chow, Claflin, Donofrio, Edelman,

12    Harding, Su, and Yahia were "governing persons of AMD Advanced Research LLC, a separate

13    private company, demonstrating interlocking interests and directorships."  *Ha* ¶ 147(h).  The *Ha*

14    Complaint contains no allegations describing what AMD Advanced Research LLC is, much less

15    how its activities are relevant to this litigation or how being a "governing person" of that entity

16    precludes anyone from fairly evaluating potential claims regarding Llano.  This alone is reason

17    to reject this conspiracy theory, but even a quick glance at AMD's filings with the Securities and

18    Exchange Commission confirms that AMD Advanced Research LLC is a wholly owned

19    subsidiary of AMD, *see* Ex. 12 at 2, and it presents absolutely no conflict for AMD directors to

20    be involved with both entities.  Directorial interest does not exist unless "divided loyalties are

21    present, or [] the director will receive a personal financial benefit from a transaction that is not

22    equally shared by the stockholders, or [] a corporate decision will have a 'materially detrimental

23    impact' on a director but not the corporation or its stockholders."  *Sagent Tech.*, 278 F. Supp. 2d

24    at 1087.  There are no allegations suggesting that the interests of AMD and AMD Advanced

25    Research could or would diverge with respect to the subject matter of the *Ha* Complaint – and,

26    indeed, all evidence is to the contrary.

27    *Second*, Mr. Ha claims that Directors Donofrio and Denzel cannot be impartial because

28    they also serve on the board of the National Association of Corporate Directors ("NACD"),

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

18

DEFENDANTS' NOTICE OF MOTION, MOTION TO
DISMISS, AND SUPPORTING MEMORANDUM
CASE NO. 4:15-cv-01890-YGR

1    which allegedly "received payments from AMD." *Ha* ¶¶ 152-53.  Again, Mr. Ha does not

2    describe NACD, but it counts more than 18,000 active corporate directors as members, 73% of

3    whom are members of the boards of public companies, and counts members on the boards of 472

4    of the Fortune 500 (94%).  Ex. 13 at 2.  If association with NACD is disqualifying, few corporate

5    boards would ever be capable of evaluating a shareholder demand.

6         *Third*, Mr. Ha claims that Directors Harding, Yahia, and Edelman could not be impartial

7    because each was "designated by AMD" or "considered" by AMD to be "a non-independent

8    director." *Ha* ¶¶ 149-51.  As an initial matter, "independence" for purposes of NASDAQ rules

9    and Delaware demand futility analysis are "completely different" and "unrelated."  *In re Google,*

10   *Inc. S'holder Derivative Litig.*, 2013 WL 5402220, at *7 (N.D. Cal. Sept. 26, 2013); *Stockman-*

11   *Sann v. McKnight*, 2013 WL 8284817, at *9 (C.D. Cal. Mar. 25, 2013).

12        Again, the omission of factual allegations about these directors' purported conflicts is

13   presumably intentional.  As disclosed in AMD's 2015 Proxy Statement, Mr. Harding was "the

14   President and Chief Executive Officer of eSilicon," which was "one of [AMD's] suppliers" that

15   received payments from AMD "in the approximate amount of $2.8 million" in "fiscal 2014."

16   Ex. 6 at 77.  That entity has nothing to do with Llano or the claims in this case and Mr. Harding's

17   role with eSilicon does not preclude him from independently evaluating a demand related to

18   Llano.   Likewise, Mr. Ha claims that Directors Yahia and Edelman could not be impartial

19   because Yahia was "a director of both AMD and [GF]" and "also the CEO of Mubadala," and

20   Edelman "provide[d] senior advisory services to defendant Yahia's company." *Ha* ¶¶ 147(e),

21   (g).  Directors routinely have relationships with suppliers and other industry participants—this

22   knowledge is why these individuals are often selected to serve on Boards of Directors.  Under

23   Delaware law, the analysis of whether such individuals are independent "turns . . . on whether

24   [the challenged director's] business relationship with [the supplier] was material to [the supplier]

25   or to [the joint director] himself as a director of [the supplier]."  Where the allegation is merely

26   that the director "is a member of the [supplier's] board of directors and [states] the amounts [the

27   nominal defendant] paid for the firm's products and services," such "facts, standing alone, are

28   insufficient to cast reasonable doubt on [the director's] independence for demand purposes."

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

19

DEFENDANTS' NOTICE OF MOTION, MOTION TO
DISMISS, AND SUPPORTING MEMORANDUM
CASE NO. 4:15-cv-01890-YGR

1  *Khanna v. McMinn*, 2006 WL 1388744, at *17 (Del. Ch. May 9, 2006).  Here again, Mr. Ha

2  alleges nothing to suggest Directors Yahia and Edelman could not consider a demand impartially

3  or explain why AMD pursuing its *own* officers and directors for allegedly making misstatements

4  would affect either Mr. Yahia's or Mr. Edelman's interests with respect to GF.

5                                    *   *   *

6        When the *Hamilton* action was originally filed in April 2015, AMD's Board of Directors

7  consisted of twelve individuals.  The Board remained the same in September 2015, when the *Ha*

8  Complaint was originally filed, except that Dr. Barnes had retired.  Even if the Court finds that

9  these iterations of AMD's Board are the appropriate targets for demand futility allegations,

10  Delaware law still requires Plaintiffs to plead "particularized facts" showing that a majority of

11  these 11 (or 12)  individuals were guilty of "'fraudulent,' 'illegal,' or 'bad faith conduct'" and

12  "acted with scienter" to wrest control of the decision to bring a lawsuit on the Company's behalf.

13  *In re Yahoo!*, 153 F. Supp. 3d at 1120 (quoting *Wood*, 953 A.2d at 141).  To meet this burden,

14  "facts specific to each director must be alleged."  *Brown*, 2010 WL 2898324, at *3.  Here,

15  however, Plaintiffs merely recite certain directors' biographical information and explain that

16  another lawsuit alleged that AMD made misstatements when some of them served on AMD's

17  Board.  This does not come close to the standard demanded by Rule 23.1 and Delaware law.

18  **VI.    THE *HA* COMPLAINT'S SECTION 14(A) CLAIMS ARE UNTIMELY AND
19          FAIL TO PLEAD DEMAND FUTILITY AND MATERIAL FALSITY**

20        The *Ha* Complaint also alleges violations of Section 14(a) of the Exchange Act (and

21  related regulations), claiming that AMD's annual proxy statements for 2012 through 2015 were

22  misleading because they "failed to reveal the weaknesses in AMD's internal controls that led to

23  the dissemination of the misstatements and material omissions" regarding Llano.  *Ha* ¶¶ 136,

24  141.  The *Ha* Complaint also seeks to void the April 29, 2015 director election that followed

25  AMD's 2015 proxy statement.  *Id.* ¶ 165.

26        Section 14(a) makes it unlawful to solicit a proxy in contravention of SEC rules.  *See* 15

27  U.S.C. § 78n(a).  SEC Rule 14a-9 prohibits the solicitation of a proxy by means of a proxy

28  statement that contains a statement that "is false or misleading with respect to any material fact,

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

20

DEFENDANTS' NOTICE OF MOTION, MOTION TO
DISMISS, AND SUPPORTING MEMORANDUM
CASE NO. 4:15-cv-01890-YGR

1   or which omits to state any material fact necessary in order to make the statements therein not

2   false or misleading."  17 C.F.R. § 240.14a-9(a); *see also Seinfeld v. Bartz*, 322 F.3d 693, 696

3   (9th Cir. 2003).  To state a claim under Section 14(a) and Rule 14a–9, a plaintiff must establish

4   that "(1) a proxy statement contained a material misrepresentation or omission which (2) caused

5   the plaintiff injury and (3) that the proxy solicitation itself, rather than the particular defect in the

6   solicitation materials, was an essential link in the accomplishment of the transaction."  *N.Y.C.*

7   *Emps.' Ret. Sys. v. Jobs*, 593 F.3d 1018, 1022 (9th Cir. 2010), *overruled in part on other grounds*

8   *by Lacey v. Maricopa Cty.*, 693 F.3d 896, 928 (9th Cir. 2012) (*en banc*).  As with claims for

9   breach of fiduciary duty, "to establish a threat of director liability based on a disclosure violation,

10  plaintiffs must plead facts that show that the violation was made knowingly or in bad faith."

11  *Citigroup*, 964 A.2d at 133-34.

12      A.      **Mr. Ha Failed to Plead Demand Futility for the Section 14(a) Claims**

13          Claims brought under Section 14(a) and Rule 14a-9 can be brought directly or

14  derivatively, with the law of the state of incorporation determining which is the appropriate

15  characterization.  *Copeland v. Lane*, 2012 WL 4845636, at *10-11 (N.D. Cal. Oct. 10, 2012).

16  Here, Mr. Ha purports to assert his 14(a) claims derivatively on behalf of the Company, *Ha* ¶

17  165, and was therefore obligated to make a pre-suit demand on the board of directors or plead

18  that doing so was futile, just as is required for other derivative claims.  *Tooley v. Donaldson,*

19  *Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1036 (Del. 2004); *see also Hutton v. McDaniel*, 2017

20  WL 3704696 at *11 n.9 (D. Ariz. Aug. 28, 2017); *CNET Networks*, 483 F. Supp. 2d at 966.

21  Because he did not do so, the *Ha* Complaint's Section 14(a) claim should be dismissed.  *See*

22  *supra* Sections IV-V.

23      B.      **Mr. Ha's Section 14(a) Claims are Time-Barred**

24          The limitations period for a Section 14(a) claim is "one year from the discovery of the

25  occurrences giving rise to the claim, but no later than three years from the date of the violation."

26  *VeriSign, Inc.*, 531 F. Supp. 2d at 1212; *see also Dekalb Cty. Pension Fund v. Transocean Ltd.*,

27  817 F.3d 393, 409-10 (2d Cir. 2016); *Westinghouse Elec. Corp. by Levit v. Franklin*, 993 F.2d

28  349, 353 (3d Cir. 1993); *Rudolph v. UTStarcom*, 560 F. Supp. 2d 880, 892 (N.D. Cal. 2008).  An

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

21

DEFENDANTS' NOTICE OF MOTION, MOTION TO
DISMISS, AND SUPPORTING MEMORANDUM
CASE NO. 4:15-cv-01890-YGR

1    investor is deemed to be on inquiry notice of the facts leading to a cause of action when "the

2    circumstances would suggest to an investor of ordinary intelligence the probability that she has

3    been defrauded." *Dodds v. Cigna Sec., Inc.*, 12 F.3d 346, 350 (2d Cir. 1993); *Bond Opportunity*

4    *Fund v. Unilab Corp.*, 2003 WL 21058251, at *12 (S.D.N.Y. May 9, 2003) (applying inquiry

5    notice standard to § 14(a) actions).  Thus, a Section 14(a) claim is "time-barred unless an

6    investor acting with reasonable diligence would not have discovered the facts giving rise to" the

7    alleged violation more than one year before filing the complaint.  *Silberstein v. Aetna, Inc.*, 2015

8    WL 1424058, at *10 (S.D.N.Y. Mar. 26, 2015).

9           The original *Ha* Complaint, filed September 29, 2015, alleges that AMD's proxy

10   statements should have disclosed "the weaknesses in AMD's internal controls that led to the

11   dissemination of the" allegedly false statements regarding Llano.  *Ha* ¶ 141.  If, as Mr. Ha

12   claims, the fraud alleged in the *Hatamian* complaint was enough to plead undisclosed

13   weaknesses in internal controls, then Mr. Ha was on notice of those "facts" the moment AMD

14   "corrected" its allegedly misleading statements.  *See Hutton*, 2017 WL 3704696, at *12 (holding

15   that plaintiff was put "on notice" of potential misrepresentation in proxy statement regarding

16   board's oversight of company's compliance with food safety regulations when company

17   announced a recall of its food products).  At a minimum, he was on notice by January 15, 2014

18   when the *Hatamian* complaint was filed or several weeks later when AMD alerted shareholders

19   to that case.  *See* Ex. 3 at pp. 10-28 (original *Hatamian* Complaint); Ex. 4  at p. 4 (AMD's 2013

20   Annual Report, filed on February, 18, 2014); *Silberstein*, 2015 WL 1424058, at *10 (dismissing

21   § 14(a) claim as time-barred where complaint was filed 18 months after CNN published a news

22   report and plaintiffs' counsel "issued a press release detailing one of the major factual allegations

23   underlying the" complaint).  Yet Plaintiffs' Section 14(a) claims were not lodged until nearly

24   two years after the first *Hatamian* complaint, which comprehensively disclosed the "occurrences

25   giving rise to" any 14(a) claim based on AMD's purported false statements regarding Llano, and,

26   as such, they are time-barred.  *Verisign*, 531 F. Supp. 2d at 1212.

27          **C.    Mr. Ha Failed to Plead Material Falsity In AMD's Proxy Statements**

28          In any event, the *Ha* Complaint does not identify "the weaknesses in AMD's internal

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

22

DEFENDANTS' NOTICE OF MOTION, MOTION TO
DISMISS, AND SUPPORTING MEMORANDUM
CASE NO. 4:15-cv-01890-YGR

1    controls that led to the dissemination of the misstatements and material omissions," much less

2    how those controls were not functioning effectively or how they led to the alleged misstatements

3    in the *Hatamian* action.  This alone is grounds for dismissal.  *In re Paypal Holdings, Inc.*

4    *S'holder Derivative Litig.*, 2018 WL 466527, at *3-4 (N.D. Cal. Jan. 18, 2018) (noting that "[f]or

5    a statement to be false or misleading, it must affirmatively create an impression of a state of

6    affairs that differs in a material way from the one that actually exists").  The generic claim that

7    there were certain unspecified weaknesses in unspecified controls pleads no facts to suggest that

8    this disclosure would have been material to investors  deciding whether to support the

9    Company's slates of directors for 2012 through 2015.  *Ha* ¶ 141.  "Section 14(a) and Rule 14a–9

10   do not obligate corporate officials to present, no matter how unlikely, every conceivable

11   argument against their own recommendations.  They instead require that officials divulge all

12   known material facts so that shareholders can make informed choices."  *Desaigoudar v.*

13   *Meyercord*, 223 F.3d 1020, 1025 (9th Cir. 2000); *see also Gaines v. Haughton*, 645 F.2d 761,

14   779 (9th Cir. 1981) ("Absent credible allegations of self-dealing by the directors or dishonesty or

15   deceit which inures to the direct, personal benefit of the directors . . . director misconduct of the

16   type traditionally regulated by state corporate law [e.g., breaches of fiduciary duties] need not be

17   disclosed in proxy solicitations for director elections"), *overruled on other grounds by Virginia*

18   *Bankshares, Inc. v. Sandberg*, 501 U.S. 1083 (1991).

19        The *Ha* Complaint simply declares that the allegedly omitted information "would have

20   been material to the Company's shareholders in determining whether to elect or reelect directors

21   to manage their Company."  *Ha* ¶ 163.  Even if that were a factual allegation rather than a legal

22   conclusion, it cannot possibly be true, as AMD's 2014 *and* 2015 proxy statements were issued

23   *after* the *Hatamian* complaint had been filed and had been disclosed in in the Company's 2013

24   Annual Report.  *See* Ex. 4 at p. 4 (excerpts of AMD's 2013 Annual Report).  Shareholders

25   nonetheless elected AMD's proposed slate of directors in 2014 and 2015 following these

26   disclosures.  Ex. 5 at p. 2 (results of May 8, 2014 director election); Ex. 15 at p. 2 (results of

27   April 29, 2015 director election).  Because the *Ha* Complaint merely parrots the *Hatamian*

28   allegations, it does not even identify what additional information should have been disclosed—

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

23

DEFENDANTS' NOTICE OF MOTION, MOTION TO
DISMISS, AND SUPPORTING MEMORANDUM
CASE NO. 4:15-cv-01890-YGR

1  much less how it would be materially different from what shareholders already knew.  Moreover,

2  because "a Section 14(a) claim requires that the votes solicited by a false proxy statement

3  directly authorize the loss-generating corporate action,"  a complaint "alleging generally that the

4  mere election of directors was an essential link to the directors' subsequent wrongdoing does not

5  satisfy Section 14(a)'s requirements."  *Paypal*, 2018 WL 466527, at *4.  In other words,

6  claiming—as Mr. Ha does here—that "individuals remained on the Board and subsequently

7  presided over [the issuer's] allegedly deceptive practices is [] insufficient"  *Id.*; *see Ha* ¶ 141.

8  **VII.   PLAINTIFFS' MISMANAGEMENT, WASTE, AND UNJUST ENRICHMENT
      CLAIMS ARE MERELY DUPLICATIVE OF THEIR FIDUCIARY CLAIMS**

9

10       Plaintiffs' remaining causes of action (Counts IV and V in *Ha* and Counts II and III in

11  *Hamilton*) are duplicative of their fiduciary duty claims and do not independently give rise to a

12  "substantial likelihood" of liability.  *Gamco Asset Mgmt., Inc. v. iHeartMedia, Inc.*, 2016 WL

13  6892802, at *19 (Del. Ch. Nov. 29, 2016) (dismissing "duplicative" unjust enrichment claims);

14  *In re Walt Disney Co. Deriv. Litig.*, 907 A.2d 693, 748 (Del. Ch. 2005), *aff'd*, 906 A.2d 27 (Del.

15  2006); *see also Citigroup*, 964 A.2d at 115 ("Delaware law does not recognize an independent

16  cause of action against corporate directors and officers for reckless and gross mismanagement;

17  such claims are treated as claims for breach of fiduciary duty.").  Claims for abuse of control are

18  likewise "often considered a repackaging of claims for breach of fiduciary duties instead of being

19  a separate tort."  *In re Zoran Corp. Deriv. Litig.*, 511 F. Supp. 2d 986, 1019 (N.D. Cal. 2007).

20  Finally, "[a] claim for waste must be predicated on an affirmative board decision."  *In re Yahoo!*,

21  153 F. Supp. 3d at 1127; *Brehm*, 746 A.2d at 263; *Citigroup*, 964 A.2d at 136; *Laties v. Wise*,

22  2005 WL 3501709, at *2 (Del. Ch. Dec. 14, 2005) (rejecting waste claim where there were "no

23  allegations (let alone particularized factual allegations) that the directors made a definitive

24  decision").  Neither *Hamilton* nor *Ha* takes issue with any affirmative decision of AMD's

25  Board;[16] accordingly, Plaintiffs have no claim for corporate waste.

26

27  [16]  The *Hamilton* Plaintiffs claim that AMD's Directors are liable for corporate waste but
    expressly style their claims as failures to act. *See, e.g.*, *Hamilton* ¶ 118 (alleging waste "[b]y
    failing to properly consider the interests of the Company" and "by failing to conduct proper

28  supervision").  The *Ha* Plaintiffs do not allege a cause of action for waste.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

24

DEFENDANTS' NOTICE OF MOTION, MOTION TO
DISMISS, AND SUPPORTING MEMORANDUM
CASE NO. 4:15-cv-01890-YGR

1    **VIII.   LEAVE TO AMEND WOULD BE FUTILE AND SHOULD BE DENIED**

2         Only *three* of the ten members of the current Board served as directors or officers when

3    the events underlying these derivative litigations occurred, *see* Appendix A & Exs. 7-9 (AMD

4    SEC filings identifying AMD's current board members), and Plaintiffs do not even attempt to

5    suggest that AMD's current Board could not fairly consider a demand to bring the claims

6    asserted in the *Ha* and *Hamilton* Complaints.  Courts in the Ninth Circuit recognize that demand

7    "plainly could not be excused" under these circumstances and deny leave to amend.  *See*, *e.g.*, *In*

8    *re Yahoo!*, 153 F. Supp. 3d at 1128 & n.14 (dismissing derivative complaint with prejudice

9    because plaintiffs could not "identif[y] any facts that indicate amendment could cure the defects

10   in the Complaint" where all but one of the "current directors joined the board after the events at

11   issue"); *see also Durgin v. Sharer*, 2017 WL 2214618, at *11 (C.D. Cal. Jan. 10, 2017) (same

12   where only four of the 14 current directors served during the events leading to the litigation);

13   *Silicon Graphics*, 183 F.3d at 991 (affirming dismissal with prejudice).

14   **IX.   CONCLUSION**

15        For the reasons stated herein, the respective defendants in each of the above-captioned

16   actions respectfully request that the Court dismiss Plaintiffs' claims with prejudice.

17   //

18   //

19   //

20   //

21   //

22   //

23   //

24   //

25   //

26   //

27   //

28   //

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

25

DEFENDANTS' NOTICE OF MOTION, MOTION TO
DISMISS, AND SUPPORTING MEMORANDUM
CASE NO. 4:15-cv-01890-YGR

1    Dated:  February 22, 2018                   Respectfully submitted,

2

3                                               By:    /s/ Matthew Rawlinson
                                                          Matthew Rawlinson

4

5                                               **LATHAM & WATKINS LLP**
                                                Matthew Rawlinson (Bar No. 231890)

6                                               140 Scott Drive
                                                Menlo Park, California 94025

7                                               Telephone: +1.650.328.4600
                                                Facsimile: +1.650.463.2600

8                                               Melanie M. Blunschi (Bar No. 234264)
                                                505 Montgomery Street, Suite 2000

9                                               San Francisco, California, 94111
                                                Telephone:  +1.415.391.0600

10                                              Facsimile:  +1.415.395.8095

11                                              Jason C. Hegt (admitted *pro hac vice*)
                                                885 Third Avenue, Suite 1000

12                                              New York, New York 10022
                                                Telephone:  +1.212.906.1200

13                                              Facsimile:  +1.212.751.4864

14                                              - and -

15

16                                              **COOLEY LLP**
                                                Patrick Gibbs  (Bar No. 183174)

17                                              3175 Hanover Street
                                                Palo Alto, California  94304

18                                              Telephone:  +1.650.843.5535
                                                Facsimile:  +1.650.849.7400

19

20                                              *Attorneys for Nominal Defendant*
                                                *Advanced Micro Devices, Inc. and*

21                                              *Defendants W. Michael Barnes, Richard A.*
                                                *Bergman, John E. Caldwell, Henry WK*

22                                              *Chow, Bruce L. Claflin, Nora M. Denzel,*
                                                *Nicholas M. Donofrio, Martin L. Edelman,*

23                                              *John R. Harding, Joseph A. Householder,*
                                                *Michael J. Inglis, Rory P. Read, Thomas J.*

24                                              *Seifert, Lisa T. Su, and Ahmed Yahia*

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

26                   DEFENDANTS' NOTICE OF MOTION, MOTION TO
                     DISMISS, AND SUPPORTING MEMORANDUM
                     CASE NO. 4:15-cv-01890-YGR

**Appendix A: AMD Board Members on Relevant Dates***

| **April 27, 2015**<br>(Original *Hamilton*<br>Complaint Filed) | **September 29, 2015**<br>(Original *Ha*<br>Complaint Filed) | **January 30, 2018**<br>(Amended *Hamilton*<br>Complaint Filed) | **February 2, 2018**<br>(Amended *Ha*<br>Complaint Filed) |
|---|---|---|---|
| **Barnes**, W. Michael[#] | | | |
| **Caldwell**, John[#] | **Caldwell**, John[#] | **Caldwell**, John[#] | **Caldwell**, John[#] |
| **Chow**, Henry[#] | **Chow**, Henry[#] | | |
| **Claflin**, Bruce[#] | **Claflin**, Bruce[#] | | |
| **Denzel**, Nora | **Denzel**, Nora[#] | **Denzel**, Nora | **Denzel**, Nora[#] |
| **Donofrio**, Nicholas[#] | **Donofrio**, Nicholas[#] | **Donofrio**, Nicholas[#] | **Donofrio**, Nicholas[#] |
| **Edelman**, Martin | **Edelman**, Martin[#] | | |
| **Harding**, John[#] | **Harding**, John[#] | | |
| **Householder**, Joseph | **Householder**, Joseph[#] | **Householder**, Joseph | **Householder**, Joseph[#] |
| **Inglis**, Michael | **Inglis**, Michael[#] | **Inglis**, Michael | **Inglis**, Michael[#] |
| **Su**, Lisa[#] | **Su**, Lisa[#] | **Su**, Lisa[#] | **Su**, Lisa[#] |
| **Yahia**, Ahmed | **Yahia**, Ahmed[#] | **Yahia**, Ahmed | **Yahia**, Ahmed[#] |
| | | **Durcan**, Mark | **Durcan**, Mark |
| | | **Marren**, John | **Marren**, John |
| | | **Talwalkar**, Abhi | **Talwalkar**, Abhi |

**\* Shaded cells denote board members serving as directors or officers of AMD when any statements challenged in *Hatamian* were made.**

**[#] Denotes denote board members named as defendants in corresponding filing.**

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SILICON VALLEY

1

DEFENDANTS' NOTICE OF MOTION, MOTION TO
DISMISS, AND SUPPORTING MEMORANDUM
CASE NO. 4:15-cv-01890-YGR

### Appendix B: Decisions in Shareholder Derivative Cases, 2010 to Present[1]

Decisions Granting Motions to Dismiss for Failure to Sufficiently Allege Demand Futility

1. *Baca v. Crown*, No. CV 09-1283-PHX-SRB, 2010 U.S. Dist. LEXIS 84724 (D. Ariz. Jan. 8, 2010)
2. *In re Dow Chem. Co. Derivative Litig.*, Civil Action No. 4349-CC, 2010 Del. Ch. LEXIS 2, 2010 WL 66769 (Del. Ch. Jan 11, 2010)
3. *In re Am. Int'l Group, Inc. Derivative Litig.*, 700 F. Supp. 2d 419 (S.D.N.Y. 2010)
4. *Rahbari v. Oros*, 732 F. Supp. 2d 367 (S.D.N.Y. 2010)
5. *In re Verifone Holdings*, No. C 07-7347 MHP, 2010 U.S. Dist. LEXIS 88105, 2010 WL 3385055 (N.D. Cal. Aug. 25, 2010)
6. *In re Accuray, Inc. S'holder Derivative Litig.*, 757 F. Supp. 2d 919 (N.D. Cal. 2010)
7. *Griggs v. Jornayvaz*, Civil Action No. 09-cv-00629-PAB-KMT, 2010 U.S. Dist. LEXIS 125825, 2010 WL 4932674 (D. Colo. Nov. 29, 2010)
8. *King v. Baldino*, 409 F. App'x. 535 (3d Cir. Del. 2010)
9. *In re Bidz.com, Inc. Derivative Litig.*, 773 F. Supp. 2d 844, (C.D. Cal. 2011)
10. *In re Healthways, Inc. Derivative Litig.*, No. M2009-02623-COA-R3-CV, 2011 Tenn. App. LEXIS 129, 2011 WL 882448 (Tenn. Ct. App. Mar. 14, 2011)
11. *Oakland County Employees' Ret. Sys. v. Massaro*, 772 F. Supp. 2d 973 (N.D. Ill. 2011)
12. *Staehr v. Mack*, No. 07 Civ. 10368 (DAB), 2011 U.S. Dist. LEXIS 36014, 2011 WL 1330856 (S.D.N.Y. Mar. 31, 2011)
13. *Morrone v. Erlich*, No. 09 CV 1910 (RJD)(VV), 2011 U.S. Dist. LEXIS 36473, 2011 WL 1322085 (E.D.N.Y. Mar. 31, 2011)
14. *Freuler v. Parker*, 803 F. Supp. 2d 630 (S.D. Tex. 2011)
15. *In re Johnson & Johnson Derivative Litig.*, 865 F. Supp. 2d 545 (D.N.J. 2011) (applying New Jersey law)
16. *In re Goldman Sachs Group, Inc. S'holder Litig.*, Civil Action No. 5215-VCG, 2011 Del. Ch. LEXIS 151, 2011 WL 4826104 (Del. Ch. Oct. 12, 2011)
17. *City of Roseville Emps. Ret. Sys. v. Crain*, Civil Action No. 11-2919 (JLL), 2011 U.S. Dist. LEXIS 122560, 2011 WL 5042061 (D.N.J. Oct. 24, 2011)
18. *In re Oracle Corp. Derivative Litig.*, No. C 10-3392 RS, 2011 U.S. Dist. LEXIS 129765, 2011 WL 5444262 (N.D. Cal. Nov. 9, 2011)
19. *Talley v. Mann*, CV 11-05003 GAF (SSx), 2012 U.S. Dist. LEXIS 50523 (C.D. Cal. Feb. 14, 2012)
20. *Saginaw Police & Fire Pension Fund v. Hewlett-Packard Co.*, No. 5:10-CV-4720 EJD, 2012 U.S. Dist. LEXIS 38475, 2012 WL 967063 (N.D. Cal. Mar. 21, 2012)
21. *In re Berkshire Hathaway Derivative Litig.*, No. 6392-VCL, 2012 Del. Ch. LEXIS 57 (Del. Ch. Mar. 19, 2012)
22. *Strong ex rel. Tidewater, Inc. v. Taylor*, 877 F. Supp. 2d 433 (E.D. La. 2012)
23. *Holt v. Golden*, 880 F. Supp. 2d 199 (D. Mass. 2012) (applying Nevada law)

---

[1] These cases were identified by reviewing all decisions available in a commercially available legal research database which were dated between January 1, 2010 and February 8, 2018 and contain the terms "Caremark" and "demand futility." All decisions apply Delaware law or, where noted, the law of another state that follows Delaware law. Listed decisions may be subject to decided and/or pending appeals

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

1

DEFENDANTS' NOTICE OF MOTION, MOTION TO
DISMISS, AND SUPPORTING MEMORANDUM
CASE NO. 4:15-cv-01890-YGR

24. *In re Am. Apparel Shareholder Derivative Litig.*, No. CV 10-06576 MMM (RCx), 2012 U.S. Dist. LEXIS 146970, 2012 WL 9506072 (CD Cal July 31, 2012)

25. *Cook v. McCullough*, No. 11-CV-9119, 2012 U.S. Dist. LEXIS 114621, 2012 WL 3488442 (N.D. Ill. Aug. 13, 2012)

26. *Lukas v. McPeak*, No. 3:11-CV-422, 2012 U.S. Dist. LEXIS 135251 (E.D. Tenn. Sept. 21, 2012), affirmed by *Lukas v. McPeak*, 730 F.3d 635 (6th Cir 2013) (applying Tennessee law)

27. *South v. Baker*, 62 A.3d 1 (Del. Ch. 2012)

28. *Taylor v. Kissner*, 893 F. Supp. 2d 659 (D. Del. 2012)

29. *In re Abbott Depakote S'holder Derivative Litig.*, 909 F. Supp. 2d 984 (N.D. Ill. 2012)

30. *In re Facebook, Inc.*, 922 F. Supp. 2d 445 (S.D.N.Y. 2013)

31. *Kococinski v. Collins*, 935 F. Supp. 2d 909 (D. Minn. 2013) (applying Minnesota law)

32. *Bank of Am. Corp. v. Lewis (In re Bank of Am. Corp. Sec., Derivative & Emp. Ret. Income Sec. Act)*, No. 09 MD 2058 (PKC), 2013 U.S. Dist. LEXIS 59783, 2013 WL 1777766 (S.D.N.Y. Apr. 25, 2013)

33. *Waber v. Lewis (In re Bank of Am. Corp. Secs., Derivative, and ERISA)*, Master File No. 09 MD 2058 (PKC), 2013 U.S. Dist. LEXIS 59912 (S.D.N.Y. Apr. 25, 2013) (Consolidated with previous case; two separate complaints)

34. *In re SAIC Derivative Litig.*, 948 F. Supp. 2d 366 (S.D.N.Y. 2013), affirmed by *Welch v. Havenstein*, 553 F. App'x. 54 (2nd Cir. 2014)

35. *Harold Grill 2 IRA v. Chênevert*, Civil Action No. 7999-CS, 2013 Del. Ch. LEXIS 150, 2013 WL 3014120 (Del. Ch. June 18, 2013)

36. *In re Capital One Derivative S'holder Litig.*, 952 F. Supp. 2d 770 (E.D. Va. 2013)

37. *Morefield v. Bailey*, 959 F. Supp. 2d 887 (E.D. Va. 2013) (applying Nevada law)

38. *In re China Auto. Sys.*, No. 7145-VCN, 2013 Del. Ch. LEXIS 217, 2013 WL 4672059, 2013 (Del. Ch. Aug. 30, 2013)

39. *Vitellone v. Evans*, No. H-13-1887, 2013 U.S. Dist. LEXIS 179016, 2013 WL 6806179 (S.D. Tex. Dec. 20, 2013)

40. *In re Hecla Mining Co. Derivative S'holder Litig.*, No. 2:12-CV-00097-REB, 2014 U.S. Dist. LEXIS 22384, 2014 WL 689036 (D. Idaho Feb. 20, 2014)

41. *Brautigam v. Blankfein*, 8 F. Supp. 3d 395 (S.D.N.Y. 2014)

42. *Montini v. Lawler*, No. 12-11296-DJC, 2014 U.S. Dist. LEXIS 40105, 2014 WL 1271696 (D. Mass. Mar. 26, 2014)

43. *In re JPMorgan Chase & Co. Derivative Litig.*, No. 12 Civ. 03878 (GBD), 2014 U.S. Dist. LEXIS 46363 (S.D.N.Y. Mar. 31, 2014)

44. *Canty v. Day*, No. 13 Civ. 5629 (KBF), 2014 U.S. Dist. LEXIS 50506, 2014 WL 1388676 (S.D.N.Y. Apr. 9, 2014)

45. *In re Maxwell Techs., Inc.*, No. 13-CV-966-BEN (RBB), 2014 U.S. Dist. LEXIS 72763, 2014 WL 2212155 (S.D. Cal. May 27, 2014)

46. *Campbell v. Yu*, 2014 U.S. Dist. LEXIS 79009, No. 12 Civ. 3169 (LAK), 2014 WL 2599856 (S.D.N.Y. June 10, 2014)

47. *Steinberg v. Dimon*, No. 14 Civ. 688 (PAC), 2014 U.S. Dist. LEXIS 96838 (S.D.N.Y. Jul. 16, 2014)

48. *Cent. Laborers' Pension Fund v. Dimon*, No. 14 Civ. 1041 (PAC), 2014 U.S. Dist. LEXIS 100874 (S.D.N.Y. Jul. 23, 2014)

49. *Zomolosky v. Kullman*, 70 F. Supp. 3d 595 (D. Del. 2014)

50. *Brautigam v. Rubin*, 55 F. Supp. 3d 499 (S.D.N.Y. 2014)

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

2

DEFENDANTS' NOTICE OF MOTION, MOTION TO
DISMISS, AND SUPPORTING MEMORANDUM
CASE NO. 4:15-cv-01890-YGR

51. *Action v. Krzanich*, (*In re Intel Corp. S'holder Derivative Litig. Consol.*) No. 1-14-CV-261831, 2014 Cal. Super. LEXIS 393 (Sept. 29, 2014)

52. *Seni v. Peterschmidt*, Civil Action No. 12-cv-00320-REB-CBS, 2014 U.S. Dist. LEXIS 158956 (D. Colo. Nov. 10, 2014)

53. *In re Polycom, Inc.*, 78 F. Supp. 3d 1006 (N.D. Cal. 2015)

54. *Liang v. Berger*, Civil Action No. 13-cv-12816-IT, 2015 U.S. Dist. LEXIS 28356 (D. Mass. Mar. 9, 2015)

55. *Brautigam v. Blankfein*, 8 F. Supp. 3d 395 (S.D.N.Y. 2014)

56. *In re Wal-Mart Stores, Inc. S'holder Derivative Litig.*, No. 4:14-cv-4041, 2015 U.S. Dist. LEXIS 42058 (W.D. Ark. Mar. 31, 2015)

57. *In re General Motors Co. Derivative Litig.*, No. 9627-VCG, 2015 Del. Ch. LEXIS 179 (Del. Ch. June 26, 2015)

58. *Zoumboulakis v. McGinn*, 148 F. Supp. 3d 920 (N.D. Cal. 2015)

59. *In re Apple E-Book Derivative Litig.*, No. 2014-1-CV-26954, 2015 Cal. Super. LEXIS 2655 (Dec. 21, 2015)

60. *In re Yahoo! Inc. S'holder Derivative Litig.*, 153 F. Supp. 3d 1107 (N.D. Cal. 2015)

61. *Asbestos Workers Phila. Pension Fund v. Bell*, 137 A.D.3d 680, 29 N.Y.S.3d 274 (App. Div. 2016)

62. *Lieblein v. Ersek*, Civil Action No. 14-cv-00144-MSK-KLM, 2016 U.S. Dist. LEXIS 44683 (D. Colo. Mar. 31, 2016)

63. *In re First Solar Derivative Litig.*, No. CV-12-00769-PHX-DGC, 2016 U.S. Dist. LEXIS 86005 (D. Ariz. June 30, 2016)

64. *Cottrell v. Duke*, 829 F.3d 983 (8th Cir. 2016)

65. *Melbourne Mun. Firefighters' Pension Tr. Fund v. Jacobs*, No. 10872-VCMR, 2016 Del. Ch. LEXIS 114 (Del. Ch. Aug. 1, 2016)

66. *In re Rocket Fuel Inc. Derivative Litig.*, No. 15-cv-04625-PJH, 2016 U.S. Dist. LEXIS 115023 (N.D. Cal. Aug. 26, 2016)

67. *In re Edison Int'l Derivative Litig.*, No. 15CV1581 BEN (KSC), 2016 U.S. Dist. LEXIS 125112 (S.D. Cal. Sept. 14, 2016)

68. *In re Caterpillar Inc. S'holder Derivative Litig.*, 2016 U.S. Dist. LEXIS 134797 (C.D. Ill. Sep. 29, 2016)

69. *Reiter v. Fairbank*, No. 11693-CB, 2016 Del. Ch. LEXIS 158 (Del. Ch. Oct. 18, 2016)

70. *Horman v. Abney*, No. 12290-VCS, 2017 Del. Ch. LEXIS 13 (Del. Ch. Jan. 19, 2017)

71. *Fischman v. Reed*, No. 16cv1006-WQH-AGS, 2017 U.S. Dist. LEXIS 47152 (S.D. Cal. Mar. 29, 2017)

72. *Marshal T. Simpson Tr. v. Invicta Networks, Inc.*, 249 F. Supp. 3d 790 (D. Del. 2017)

73. *Ryan v. Armstrong*, No. 12717-VCG, 2017 Del. Ch. LEXIS 80 (Del. Ch. May 15, 2017)

74. *Gubricky v. Ells*, 255 F. Supp. 3d 1119 (D. Colo. 2017)

75. *In re Qualcomm Inc.*, No. 11152-VCMR, 2017 Del. Ch. LEXIS 106 (Del. Ch. June 16, 2017)

76. *Trickey v. Brolick*, No. 16 Civ. 7789 (PAE), 2017 U.S. Dist. LEXIS 107951 (S.D.N.Y. July 11, 2017)

77. *van der Gracht de Rommerswael v. Speese*, No. 4:17CV227-ALM-CMC, 2017 U.S. Dist. LEXIS 169924 (E.D. Tex. Aug. 11, 2017)

78. *Hutton v. McDaniel*, 264 F. Supp. 3d 996 (D. Ariz. 2017)

79. *Lieblein v. Ersek*, Civil Action No. 14-cv-00144-MSK-KLM, 2017 U.S. Dist. LEXIS 160864 (D. Colo. Sep. 29, 2017)

80. *City of Birmingham Ret. & Relief Sys. v. Good*, No. 16, 2017, 2017 Del. LEXIS 522 (Dec. 15, 2017)

81. *Okla. Firefighters Pension & Ret. Sys. v. Corbat*, No. 12151-VCG, 2017 Del. Ch. LEXIS 848 (Del. Ch. Dec. 18, 2017)

82. *In re Paypal Holdings, Inc.*, No. 17-cv-00162-RS, 2018 U.S. Dist. LEXIS 9061 (N.D. Cal. Jan. 18, 2018)

83. *Brewer v. Breen*, No. 16 Civ. 7500 (ER), 2018 U.S. Dist. LEXIS 11510 (S.D.N.Y. Jan. 23, 2018)

Decisions Finding Demand Futility Sufficiently Alleged and Denying Motions to Dismiss

1. *In re Pfizer Inc. S'holder Derivative Litig.*, 722 F. Supp. 2d 453 (S.D.N.Y. 2010)
2. *Rich ex rel. Fuqi Int'l, Inc. v. Yu Kwai Chong*, 66 A.3d 963 (Del. Ch. 2013)
3. *In re China Agritech, Inc.*, C.A. No. 7163-VCL, 2013 Del. Ch. LEXIS 132, 2013 WL 2181514 (Del. Ch. May 21, 2013)
4. *TVI Corp. v. Gallagher*, No. 7798-VCP, 2013 Del. Ch. LEXIS 260, 2013 WL 5809271 (Del. Ch. Oct. 28, 2013)
5. *Rosenbloom v. Pyott*, 765 F.3d 1137 (9th Cir. 2014)
6. *In re SandRidge Energy, Inc. S'holder Derivative Litig.*, 302 F.R.D. 628, (W.D. Okla. 2014)
7. *In re Galena Biopharma , Inc. Derivative Litig.*, 83 F. Supp. 3d 1047 (D. Or. 2015)
8. *Public Sch. Teachers? Pension & Ret. Fund of Chi. v. Guthart*, No. CIV 526930, 2015 Cal. Super. LEXIS 16593 (Mar. 27, 2015)
9. *In re Intuitive Surgical S'holder Derivative Litig.*, 146 F. Supp. 3d 1106 (N.D. Cal. 2015)
10. *Tow v. Bulmahn*, No. 15-3141, 2016 U.S. Dist. LEXIS 57396 (E.D. La. Apr. 29, 2016)
11. *Forestal v. Caldwell*, No. CV 16-4492-MWF (GJSx), 2016 U.S. Dist. LEXIS 191432 (C.D. Cal. Nov. 14, 2016)
12. *Shaev v. Baker*, No. 16-cv-05541-JST, 2017 U.S. Dist. LEXIS 68523 (N.D. Cal. May 4, 2017)
13. *Kandell v. Niv*, No. 11812-VCG, 2017 Del. Ch. LEXIS 640 (Del. Ch. Sep. 29, 2017)

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

4

DEFENDANTS' NOTICE OF MOTION, MOTION TO
DISMISS, AND SUPPORTING MEMORANDUM
CASE NO. 4:15-cv-01890-YGR