**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **CHRISTOPHER HAMILTON, ET AL.,** | Case No.: 15-CV-1890 YGR |
| Plaintiffs, | **ORDER GRANTING MOTION TO DISMISS WITHOUT LEAVE TO AMEND** |
| vs. | |
| **ADVANCED MICRO DEVICES, ET AL.,** | **DKT. NO. 61** |
| Defendants. | |

Presently before the Court, after remand from the Ninth Circuit, is the Motion of defendants Advanced Micro Devices, Inc. ("AMD"), W. Michael Barnes, Richard A. Bergman, John E. Caldwell, Henry WK Chow, Bruce L. Claflin, Nicholas M. Donofrio, John R. Harding, Rory P. Read, Thomas J. Seifert, Lisa T. Su to Dismiss the First Amended Complaint of Plaintiff David Hamilton in this shareholder derivative action. (Dkt. No. 61.) Having carefully considered the papers submitted and the pleadings in this action, and for the reasons set forth below, the Court **GRANTS** the Motion to Dismiss **WITHOUT LEAVE TO AMEND**.

**I.    PROCEDURAL HISTORY**

   **A.    *Hatamian* Securities Class Action**

On January 15, 2014, a federal securities class action lawsuit captioned *Hatamian v. Advanced Micro Devices, Inc., et al.*, 4:14-cv-00226-YGR, was filed with this Court on behalf of investors alleged to have been fraudulently misled into purchasing stock in AMD. On March 31, 2015, this Court denied the *Hatamian* defendants' motion to dismiss the securities class action, finding the allegations of scienter sufficient based on information provided by confidential witnesses concerning the individual defendants' involvement in misleading statements made to the investing

public which the Court found "support[ed] the inference that these defendants exhibited an extreme departure from the standards of ordinary care intended to fairly inform reasonable investors." (*Hatamian* Docket No. 110 at 18.)

### B.  Filing of the Instant Action by Hamilton

Shortly thereafter, on April 27, 2015, the instant shareholder derivative action was filed by plaintiff Hamilton pursuant to Federal Rule of Civil Procedure 23.1 on behalf of nominal defendant AMD against certain of its officers and directors, seeking to remedy violations of state law, including breaches of fiduciary duties, unjust enrichment, and waste of corporate assets.  Proceedings in *Hamilton* were stayed pending resolution of the underlying *Hatamian* case.

Meanwhile in the *Hatamian* action, on March 16, 2016, the Court certified a class consisting of all purchasers of AMD stock during the period from April 4, 2011 through October 18, 2012.  On October 24, 2017, the Court preliminarily approved a $29.5 million settlement of the *Hatamian* class action.[1]

With the *Hatamian* action essentially concluded, defendants in the instant action soon thereafter re-initiated the litigation in this action by moving to dismiss the complaint.[2]  While that motion to dismiss was pending, Hamilton filed an amended complaint on February 9, 2018, incorporating information obtained from discovery in *Hatamian*.  (*See* Dkt. No. 56, and motion to seal portions thereof at Dkt. No. 51.)

In the amended complaint, Hamilton alleged that a majority of the AMD Board, as constituted on April 27, 2015, was aware of and participated in the alleged knowing or reckless dissemination of materially false and misleading statements to the public, and failure to prevent breaches of loyalty wrongful acts.  (*Hamilton* AC ¶¶ 24, 106, 110.)  Hamilton alleged that defendant board members Barnes, Caldwell, Chu, Claflin, Donofrio, Harding, and Su were all aware of and failed to correct materially false and misleading statements made by AMD officers, and also authorized and benefitted

---

[1]  The Court ultimately issued final approval of that settlement on March 6, 2018.  (*Hatamian* Docket No. 367.)

[2]  Although the action was stayed at the time, the Court thereafter lifted the stay and permitted the motion to go forward.  (Dkt. No. 46.)

from those statements.  (*Id.* ¶¶ 24, 106.)  Thus, the amended complaint alleged that the relevant board members had "potential individual financial exposure" and were not capable of making a disinterested, independent decision with respect to a pre-suit demand.  (*Id.* ¶ 106.)

Defendants moved to dismiss the amended complaint, contending, in part, that Hamilton had failed to allege sufficient facts to support his assertion that a majority of the relevant board was incapable of making an independent decision and a pre-suit demand would have been futile.[3]

On October 4, 2018, the Court granted defendants' motion to dismiss, finding that it must disregard those paragraphs in the *Hamilton* amended complaint that relied upon discovery in the related *Hatamian* securities action which were provided to Hamilton under the terms of a stipulated protective order.  In considering the remaining allegations, the Court found, under the demand futility test stated in *Rales v. Blasband*, 634 A.2d 927, 936 (Del. 1993), that Hamilton had failed to allege facts sufficient to show a pre-suit demand as to a majority of the members of the relevant board would have been futile.  (Dkt. No. 84.)  Plaintiff appealed.

C.  ***Wessels* State Court Action**

While the *Hatamian* and *Hamilton* cases were litigated in federal court, a parallel shareholder derivative action was proceeding in the California state court.  On March 20, 2014, one year prior to the filing of the *Hamilton* complaint and just months after the filing of the *Hatamian* securities class action, a shareholder derivative action based on those same allegations of wrongdoing by AMD officers was filed in the Santa Clara Superior Court: *Wessels v. Read, et al.*, No. 2014-1-cv-262486 (hereinafter "the *Wessels* case").

---

[3] In a derivative suit brought by a shareholder on behalf of a corporation, the shareholder must "demand action from the corporation's directors or plead with particularity the reasons why such demand would have been futile." *La. Mun. Police Emps.' Ret. Sys. v. Wynn*, 829 F.3d 1048, 1057 (9th Cir. 2016), quoting *Rosenbloom v. Pyott*, 765 F.3d 1137, 1148 (9th Cir. 2014).  Under applicable Delaware law "pre-suit demand is excused [when] the directors are deemed incapable of making an impartial decision regarding the pursuit of the litigation." *Wood v. Baum*, 953 A.2d 136, 140 (Del. 2008).  Thus, as this Court previously determined, "demand is excused if [p]laintiffs' particularized allegations create a reasonable doubt as to whether a majority of the relevant [board] faces a substantial likelihood of liability for failing to act in the face of a known duty to act." *Rosenbloom*, 765 F.3d at 1151.

3

As in the instant case, the plaintiffs in *Wessels* amended their complaint to include allegations based on the discovery in the *Hatamian* case. (Declaration of Jason Hegt, Dkt. 106, Ex. 2 [*Wessels* amended complaint filed January 30, 2018].) Those allegations relied on quotations and characterizations of the discovery to allege demand futility in the same way as the amended complaint in the instant case. (*See* Hegt Decl. Ex. 3 [redline comparison of demand futility allegations in the two amended complaints].)

On July 23, 2018, the state court dismissed the *Wessels* amended complaint finding that plaintiffs failed to allege demand futility sufficiently. Wessels appealed.

**D.      Hamilton's Appeal**

By memorandum decision issued March 16, 2020, the Ninth Circuit reversed and remanded this Court's dismissal stating:

> The district court erred when it refused to consider twenty-five paragraphs in Hamilton's complaint on the basis that the *Hatamian* Protective Order prohibited the use of such material other than in connection with the *Hatamian* litigation. Reviewing de novo, we do not see a basis for the *Hatamian* Protective Order to express a limitation on Hamilton's use of the discovery materials. By its own terms, the *Hatamian* Protective Order's restrictions apply only to a "Receiving Party," a definition for which Hamilton does not qualify because he is not a "party to this action." To the extent the *Hatamian* Protective Order relates to Hamilton, the only proper way to interpret "this case" or "this litigation" is in reference to Hamilton's lawsuit. That being so, it was an error of law for the district court to refuse to consider the allegations in Hamilton's complaint that were based on information received in the *Hatamian* discovery materials. We thus reverse and remand for the district court to consider the motion to dismiss in light of all of the allegations in Hamilton's complaint.

(Dkt. No. 90 at 3, internal citation omitted.)[4]  Mandate issued on April 13, 2020. (Dkt. No. 91.)

**E.      Wessels' Appeal**

The California Court of Appeals affirmed the *Wessels* dismissal in an August 27, 2020 decision. *Wessels v. Read*, No. H046255, 2020 WL 5052765 (Cal. Ct. App., Aug. 27, 2020) (unpublished). (Hegt Decl. Ex. 1.) As noted in the state appellate decision, the amended complaint

---

[4] Previously, the Court did not consider the allegations of the unredacted *Hamilton* AC set forth in the following paragraphs in determining whether plaintiffs have alleged demand futility sufficiently: 8 (partial), 43 (partial), 44, 46, 47, 48 (partial), 49 (partial), 51, 53, 55 (partial), 56, 58, 59, 60, 62 (partial), 70, 71 (partial), 74, 75, 78 (partial), 80, 81, 82, 83, and 107 (partial).

in *Wessels* alleged that demand the relevant board would have been futile based on documents produced in *Hatamian* showing that the individual defendants there had extensive knowledge of the wrongdoing at every step of the way. (*Id*. at 7.) Despite crediting all of plaintiffs' allegations, including the matters learned in the *Hatamian* discovery, the *Wessels* court found that plaintiffs had not alleged sufficient facts to show that at least six of the accused directors faced a substantial likelihood of liability for breach of loyalty or breach of fiduciary duty so as to excuse the demand requirement. (*Id*. at 18-30.) The state appellate decision became final on September 9, 2020, when the court of appeal issued its remittitur, foreclosing any further direct appeal. (*Id*.)

### F. Proceedings Post-Remand in the Instant Action

After the *Hamilton* action was remanded, this Court denied defendants' request to file additional briefing on the motion to dismiss, stating that the Court would "consider the motion to dismiss previously filed by defendants in light of allegations drawn from information obtained in the *Hatamian* litigation," as directed by the Ninth Circuit. (Dkt. No. 94, April 15, 2020 Order.) Nevertheless, in its April 15, 2020 Order, the Court allowed defendants to move for a stay pending a decision in the *Wessels* appeal, which was not yet decided at the time. While the motion for stay was under submission with this Court, the *Wessels* court issued its decision.

In light of the issuance of a final decision in *Wessels*, this Court denied the stay as moot and directed supplemental briefing on the effect of *Wessels* on the litigation here. (Dkt. No. 103.) On November 6, 2020, both sides filed their supplemental briefing and supporting documents on the question of whether the final decision in *Wessels* precludes re-litigation of the threshold issue of demand futility in this action. (Dkt. Nos. 104, 105, 106.) This decision now follows.

## II. DISCUSSION

### A. Does the Rule of Mandate Foreclose Consideration of Claim Preclusion?

Plaintiff first argues that, under the rule of mandate, this Court is not permitted to consider any preclusive effect of the decision in *Wessels* but rather must decide defendants' pending motion to dismiss "in light of all of the allegations in Hamilton's complaint" upon the existing record without

regard to *Wessels*. Plaintiff contends that a court cannot vary from the higher court's mandate and lacks jurisdiction to take actions not strictly adhering to the mandate order.[5]

Plaintiff's argument is without merit. The Ninth Circuit directed this Court to "consider the motion to dismiss in light of all of the allegations in Hamilton's complaint." (Dkt. No. 90 at 3.) A lower court "may consider and decide ***any matters left open*** by the mandate . . . ." *Thrasher*, 483 F.3d at 981–82 (quoting *In re Sanford Fork & Tool Co.,* 160 U.S. 247, 255-56 (1895)) (emphasis supplied); *see also Vizcaino v. U.S. Dist. Ct. for W. Dist. of Washington*, 173 F.3d 713, 719 (9th Cir.), *as amended* (June 10, 1999) ("On remand, a trial court can only consider 'any issue not expressly or impliedly disposed of on appeal.'") (internal citations omitted); *United States v. Cote*, 51 F.3d 178, 181 (9th Cir. 1995), *as amended on denial of reh'g* (June 2, 1995) ("Because the purpose of the doctrine is to promote judicial finality, it necessarily follows that the law of the case acts as a bar only when the issue in question was actually considered and decided by the first court . . . . [I]t clearly does not extend to issues an appellate court did not address.") (internal citations omitted).

Nothing in the Ninth Circuit's mandate requires this Court to ignore subsequent developments in a parallel state proceeding that affect the viability of "all of the allegations" in the operative complaint. The trial court's decision in *Wessels* played no part in this Court's dismissal decision nor in the Ninth Circuit's decision on review. As plaintiff himself acknowledges, although defendants submitted the trial court's order in *Wessels* as a Statement of Recent Decision (Dkt. No. 71) weeks after briefing on the motion to dismiss closed, this Court's Order Granting the Motion to Dismiss (Dkt. No. 76), "does not rely upon or reference the earlier *Wessels* trial court order, nor is it apparent that *Wessels* informed the Court's analysis." (*See* Plaintiffs' Supplemental Brief, Dkt. No. 104 at

---

[5] Plaintiff's citations do not aid him. In *Ischay*, the district court considered the effect of a district court's remand to an administrative agency. *Ischay v. Barnhart*, 383 F. Supp. 2d 1199, 1214 (C.D. Cal. 2005). The court qualified its discussion by noting that the rule of mandate barred a lower tribunal from reconsidering "*a question decided* by an appellate court." *Id*. (emphasis supplied). Here, the issue preclusion question was not decided, or even considered, by this court or the Ninth Circuit. *Thrasher* is likewise distinguishable since the Ninth Circuit "remanded for a single purpose: 'a hearing to resolve *a* critical disputed fact" on the issue of ineffective assistance. *United States v. Thrasher*, 483 F.3d 977, 983 (9th Cir. 2007) (emphasis in original). "The plain language of the disposition precluded the district court from considering any other arguments concerning [counsel's] effectiveness" on remand. *Id*. Here, the remand directs this Court to consider the viability of "all of the allegations;" it does not foreclose a finding that a dismissal of those same allegations would have a preclusive effect.

2:23-25.) Further, the Ninth Circuit's mandate plainly did not touch upon the effect of a final decision on the *Wessels* appeal, which did not occur until months after the mandate.

In short, the Ninth Circuit's review did not consider or decide the question of *Wessels'* preclusive effect on the instant action. Thus, the Court concludes that the rule of mandate is no bar to its consideration of that issue now.

**B.     Does *Wessels* Preclude Hamilton's Basis for Alleging Demand Futility?**

Defendants argue that *Wessels* has a preclusive effect on the instant complaint such that it should be dismissed for failure to allege demand futility sufficiently. More specifically, defendants argue that a finding of failure to plead demand futility by *Wessels* bars another shareholder (*i.e.* Hamilton) from relitigating demand futility as to the same directors based on the same conduct.

Defendants rely primarily on the Ninth Circuit's decision in *Arduini v. Hart*, 774 F.3d 622 (9th Cir. 2014). In *Arduini*, the Ninth Circuit held that a shareholder derivative action was properly dismissed under the doctrine of issue preclusion because demand futility was previously litigated in favor of defendants in a prior shareholder derivative action. *Id*. at 638.[6] Similarly, and expressly applying California preclusion law, the Delaware Supreme Court in *Pyott* held that a ruling finding a shareholder derivative plaintiff failed to allege demand futility sufficiently based upon specific alleged wrongful acts had a preclusive effect and foreclosed re-litigation of demand futility based on the same specific alleged wrongful acts. *See Pyott v. La. Mun. Police Emps.' Ret. Sys.*, 74 A.3d 612, 617 (Del. 2013).

The Full Faith and Credit Clause of the Constitution and the Full Faith and Credit statute, 28 U.S.C. § 1738, require federal courts to apply the collateral estoppel rules of the state rendering the original decision. *In re Cantrell,* 329 F.3d 1119, 1123 (9th Cir.2003). Under California law, in order for an issue decided in one case to have preclusive effect in another, the party asserting a preclusive effect must show: (i) the issue sought to be precluded from re-litigation is "identical" to that decided

---

[6] Plaintiff argues that the Ninth Circuit's decision in *Arduini* should not be extended to apply here since it considered Nevada law on collateral estoppel, not California law. However, as *Arduini* noted "California and Nevada law regarding issue preclusion are similar." *Arduini*, 774 F.3d at 634 n.10. Plaintiff cites no significant differences between the two states' collateral estoppel rules.

7

in an earlier proceeding; (ii) the issue was both "actually litigated" and "necessarily decided" in the earlier case; (iii) the decision in the earlier case is final and "on the merits"; and (iv) the party against whom preclusion is sought is the same as, or in privity with, the party in the earlier case. *Lucido v. Superior Court*, 51 Cal.3d 335, 341 (1990)); *see also LeBoyer v. Greenspan*, No. CV 03-5603-GHK JTLX, 2007 WL 4287646, at *1 (C.D. Cal. June 13, 2007) (same). The Court considers each of the foregoing elements in turn.

   1.   Are the Demand Futility Issues Identical?

Defendants contend that the demand futility allegations in *Wessels* were a near carbon-copy of the ones Hamilton makes here, quoting the same discovery materials and describing them in the same way. (*See* Hegt Decl. Ex 3 [redline comparison of demand futility allegations in the two amended complaints].) Plaintiff counters that the demand futility issue in *Hamilton* is not "identical" to that presented in *Wessels* because the composition of the relevant AMD boards of directors for assessing demand futility in the cases is different. In particular, while Lisa Su and John Harding are both defendants in the instant action, they were not defendants in the *Wessels* action. Su was not part of the relevant demand board in *Wessels* and Harding's impartiality was not challenged there.

Plaintiff fails to persuade. "Identity" of the issues for claim preclusion purposes does not require that the prior action allege precisely identical facts—"[t]he question is . . . whether the 'same ultimate issue' was decided in the prior case." *Arduini*, 774 F.3d at 629 (citation omitted). As the Ninth Circuit has noted, if the mere change of a few allegations precluded a finding of identity of the issues, "issue preclusion would almost never apply," and defendants "would be forced to repeatedly relitigate demand futility, leading to 'multiple litigation,' wasted judicial resources, and potentially inconsistent proceedings." *Id.* at 630; *see also In re Sonus Networks, Inc., Shareholder Derivative Litig.*, 499 F.3d 47, 62-63 (1st Cir. 2007) (same). For this reason, the *Arduini* court noted that numerous "district and state courts applying their respective state law on issue preclusion and demand futility have also found that new allegations added to subsequent shareholder suits made no difference to the demand futility analysis and thus did not bar issue preclusion." *Arduini*, 774 F.3d at 631 n.6 (collecting cases).

Moreover, Hamilton offers no argument that the demand futility allegations here differ materially from those in *Wessels*, only that the relevant demand board compositions differed slightly. Such differences do not change the analysis here. Of the seven individual AMD directors named as defendants here, ***five*** were also board members named as defendants in *Wessels* (*i.e.*, defendants Barnes, Caldwell, Chow, Claflin, and Donofrio). The *Wessels* court found the allegations against each of these defendants insufficient to establish demand futility. Even if plaintiff's allegations as to Su and Harding supported demand futility, the nearly identical allegations in *Wessels* as to the ***remaining five board member defendants*** does not. Thus, the ultimate issue of demand futility as to a ***majority*** of the relevant 12-member board is the same in both actions.

*2. Was the Demand Futility Issue Actually Litigated and Necessarily Decided?*

Hamilton argues the second issue preclusion factor cannot be established here because neither Su's nor Harding's disinterestedness or independence were at issue in *Wessels*, and thus demand futility as to them could not have been "actually litigated" and "necessarily decided."

In a derivative suit, an issue is "actually litigated" "when the party against whom the [collateral] estoppel is asserted has notice, opportunity, and incentive to litigate the issue at the prior proceeding." *LeBoyer*, 2007 WL 4287646, at *2 (citing *People v. Sims*, 32 Cal. 3d 468, 481 (1982)). Where, as here, the prior "decision dismissed the case with prejudice based only upon the issue of demand futility," it is indisputable that the demand futility issue was "necessarily decided." *Id.* at *2; *see also Pyott*, 74 A.3d at 617.

As in the analysis of the first factor above, it makes no difference that Su and Harding were not defendants in the prior case. The *Wessels* decision eliminates the possibility of establishing demand futility of a majority of the relevant board in both cases, regardless of whether the *Wessels* court considered the potential liability and impartiality of Su or Harding.

3.      *Is the* Wessels *Decision "On the Merits"?*

Next, Hamilton contends the dismissal in *Wessels* was not "on the merits" for purposes of issue preclusion since dismissal for failure to allege demand futility is, in effect, dismissal on procedural standing grounds. *Shields v. Singleton*, 15 Cal.App.4th 1611, 1618 (1993) (under

9

California Corporations Code provisions for shareholder derivative actions); *see also Apple Inc. v. Superior Court*, 18 Cal. App. 5th 222, 248 (2017) ("Viewed as a matter of standing, a determination on demurrer that a plaintiff has failed to adequately alleged demand futility means that the plaintiff has yet to establish standing to pursue the derivative claims.").[7] Under California law, a dismissal for lack of standing does not involve the merits for purposes of issue preclusion. *See Hudis v. Crawford*, 125 Cal. App. 4th 1586, 1592 (2005).

The Court does not agree. While California law applies to the collateral estoppel rule itself, the nature of the demand futility requirement is a matter of federal and Delaware law. *LeBoyer v. Greenspan*, No. CV 03-5603-GHK JTLX, 2007 WL 4287646, at *2, 3 (C.D. Cal. June 13, 2007); *see also Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 96–97 (1991) ("[T]he function of the demand doctrine [under Rule 23.1] in delimiting the respective powers of the individual shareholder and of the directors to control corporate litigation clearly is a matter of 'substance,' not 'procedure.'") Prior dismissals of derivative suits for failure to plead demand futility are treated as "final" and "on the merits." *Pyott*, 74 A.3d at 617; *see also LeBoyer*, 2007 WL 4287646, at *2-3 ("Were the demand futility issue not final and on the merits it could be infinitely litigated in subsequent suits by successive individual plaintiffs suing in a derivative capacity."); *Sonus*, 499 F.3d at 59, 62 ("dismissal of a derivative suit for failure to adequately plead a demand or futility of a demand" is final and "on the merits" such that "it is entitled to issue-preclusive effect").

As in *LeBoyer*, "despite Plaintiff's attempt to characterize the state court's decision on demand futility as a procedural question of standing . . . [the] decision was final and on the merits." *LeBoyer*, 2007 WL 4287646 at *2-3. Thus, this issue preclusion factor is satisfied.

---

[7] Plaintiff cites to *Shields v. Singleton*, 15 Cal.App.4th 1611, 1618 (1993) and *Apple Inc. v. Superior Court*, 18 Cal. App. 5th 222, 248 (2017). Neither are persuasive. *Shields* was decided under California's state law concerning shareholder derivative suits. The *Apple* court's characterization of the pleading requirements is arguably dicta, given that the decision concerned the requirement to allege demand or futility as to the board in place at the time of the amended complaint, an issue avoided both here and in *Wessels* by the parties' stipulation to an earlier demand board. *Cf. Apple*, 18 Cal.App.5th at 248 ("It follows that a plaintiff reasserting derivative claims in an amended complaint, after a sustained demurrer on demand futility grounds, remains subject to the standing requirement and must allege demand futility with respect to the board that would be addressing demand at that time.")

### 4. Are the Parties In Privity?

Finally, with respect to the question of privity of the parties, Hamilton argues that he and Wessels are strangers with no relationship other than both owning AMD stock. However, in a shareholder derivative action, that relationship as shareholders seeking to represent the corporation is the only one that actually matters.

Both the Ninth Circuit and Delaware high court have reviewed similar shareholder derivate actions and found the requisite privity to exist as between successive derivative plaintiffs, under both state and federal case law. *See California State Teachers' Ret. Sys. v. Alvarez*, 179 A.3d 824, 848 (Del.), *cert. denied*, 139 S.Ct. 177 (2018) ("[t]he five federal circuit courts that have considered whether privity exists between sets of successive derivative plaintiffs have *all* found the requisite privity under the applicable law, whether state law or federal common law."); *see also Arduini*, 774 F.3d at 627-28 ("[P]laintiffs in a shareholder derivative action represent the corporation, and therefore the question of whether demand on the board of directors would have been futile is an issue that is the same no matter which shareholder serves as plaintiff.").

Hamilton contends that California law requires finding no privity here, citing *Vega v. Jones, Day, Reavi & Pogue*, 121 Cal.App.4th 282, 299 (2004) (where "the only relationship between [plaintiff] and the prior lawsuit is that he and the plaintiffs in those suits were shareholders in the same company" there is no "sufficiently close" relationship to establish privity). *Vega* is distinguishable. The court there expressly determined the claim was ***not*** a shareholder derivative claim. *Id*. at 296-97 ("An action is derivative if the gravamen of the complaint is injury to the corporation, or to the whole body of its stock and property without any severance or distribution among individual holders, or it seeks to recover assets for the corporation or to prevent the dissipation of its assets. This is not such a case."). Thus, the *Vega* court's finding of a lack of privity between plaintiff and three other shareholders whose ***individual*** fraud claims were dismissed in prior lawsuits has no bearing on the analysis of privity in the shareholder derivative context.

The Court has found no California state court case addressing the question of privity as between successive shareholder derivative plaintiffs. However, the cases applying California law

(*Pyott*) and applying nearly identical privity formulations in this Circuit (*Arduini*) support a finding of privity here.  See *Arduini*, 774 F.3d at 633–34 ("the Delaware Supreme Court, *applying California law*, held that 'derivative stockholders are in privity with each other because they act on behalf of the defendant corporation.'") (quoting *Pyott,* 74 A.3d at 614, emphasis supplied).  As a leading class action treatise states:

> Virtually all courts to consider the question also have recognized that privity exists between the original and subsequent shareholder derivative plaintiffs because both sue on behalf of the corporation, asserting claims belonging not to them as individuals, but to the corporation.  That is, because the claim belongs to the corporation, that the shareholders seeking to press the claim are different is irrelevant. As numerous cases have correctly recognized, it is the corporation's status as a party that matters for preclusion purposes. The proposition that due process requires re[-]litigation of whether a company has the right to control its own legal claims is at odds with the central premise of demand futility law recognizing that the demand futility ruling adjudicates the corporation's rights, and not only the individual stockholder-plaintiff's standing to sue.

2 MCLAUGHLIN ON CLASS ACTIONS (17th ed.) § 9:26 (internal citations omitted); *see also Alvarez*, 179 A.3d at 846-47 (contrasting Rule 23 class action representatives with shareholder-derivative plaintiffs at the demand futility stage: "Though not a formal 'representative' of other stockholders at this stage because the real party in interest is the corporation, differing groups of stockholders who seek to control the corporation's cause of action share the same interest and therefore are in privity.")  Based on the overwhelming authority in the shareholder derivative context, the Court concludes that privity between Hamilton and Wessels is established.

### III.  CONCLUSION

Based on the foregoing, re-litigation of Hamilton's allegations of demand futility is foreclosed under the applicable issue preclusion rule.  Based upon the preclusive effect of the *Wessels* decision, the motion to dismiss is **GRANTED WITHOUT LEAVE TO AMEND**.

This decision terminates the action.  The Clerk is directed to close the file.

IT IS SO ORDERED.

Date: April 5, 2021

_____
YVONNE GONZALEZ ROGERS
UNITED STATES DISTRICT COURT JUDGE